# EXHIBIT "A"

HRMM&L

HAMBURG, RUBIN, MULLIN,
MAXWELL & LUPIN, PC
ATTORNEYS AT LAW

CENTRALIZED OPS
HARTFORD
JUN 0 9 2026
RECEIVED
JM.

31,336-0005

www.HRMML.com
Lawyers@HRMML.com

J. Edmund Mullin
Steven H. Lupin
Carl N. Weiner
Mark F. Himsworth
Steven A. Hann
Steven B. Barrett
Christen G. Pionzio
Ethan R. O'Shea
Bernadette A. Kearney
Paul G. Mullin
John J. Iannozzi
William G. Roark
Kevin M. McGrath, LL.M.
Lisa A. Shearman, LL.M.
Robert J. Iannozzi Jr.
Michael S. Gill
Ron L. Woodman
Amy C. Quigg
John S. Han
Steven J. English
Zachary R. Morano
Brittany A. Kane
Jack X. Jiang
Celso L. Leite
J. Braun Taylor
Mark A. Umansky
Gabriela A. Amado
Grace G. Gelone
Rylie M. Eisenhardt

OF COUNSEL:
Senator John C. Rafferty Jr.
Kathleen A. Maloles

LANSDALE
1684 S. Broad Street
Suite 230
Post Office Box 1479
Lansdale, PA 19446-5422
Phone 215-661-0400
Fax 215-661-0315

PHILADELPHIA
123 S. Broad Street
Suite 2102
Philadelphia, PA 19109
Phone 215-661-0400
Fax 215-661-0315

June 2, 2026

**via First-Class Mail w/ Certificate of Mailing**
**via Certified Mail, Return Receipt Requested**
**(9589 0710 5270 3182 0598 94 / 9590 9402 9651 5199 4972 27)**
The Hartford Insurance Group, Inc.
1 Hartford Plaza
Hartford, CT 06155

**via First-Class Mail w/ Certificate of Mailing**
**via Certified Mail, Return Receipt Requested**
**(9589 0710 5270 3182 0599 00 / 9590 9402 9501 5069 2038 24)**
Maxum Indemnity Company
3655 North Point Parkway, Suite 400
Alpharetta, GA 30005

**Re: Coronado's Pool Plaster Inc. v. The Hartford Insurance Group, Inc., et al.**
**Montgomery County C.C.P. – No.: 2026-14180**

Dear Sir or Madam:

Enclosed please find a time-stamped copy of a Complaint, which is being served upon you in accordance with the Pennsylvania Rules of Civil Procedure.

Very truly yours,

HAMBURG, RUBIN, MULLIN,
MAXWELL & LUPIN

By: ______________________
MARK F. HIMSWORTH

MFH/kmd
Enclosure
cc: Brittany Ann Kane, Esquire (w/enc.) – **via e-mail** **(bkane@hrmml.com)**
Coronado's Pool Plaster Inc. (w/enc.) – **via e-mail**

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA**

| | |
|---|---|
| CORONADOS POOL PLASTER INC<br>vs.<br>THE HARTFORD INSURANCE GROUP INC | NO. 2026-14180 |

**NOTICE TO DEFEND – CIVIL**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCIATION
100 West Airy Street (REAR)
NORRISTOWN, PA

19404-0268 (610) 279-9660, EXTENSION 201

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

CORONADOS POOL PLASTER INC

vs.

THE HARTFORD INSURANCE GROUP INC

NO. 2026-14180

# CIVIL COVER SHEET

State Rule 205.5 requires this form be attached to any document commencing an action in the Montgomery County Court of Common Pleas. The information provided herein is used solely as an aid in tracking cases in the court system. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.

---

Name of Plaintiff/Appellant's Attorney: MARK F HIMSWORTH, ESQ., ID: 49856

Self-Represented (Pro Se) Litigant [ ]

---

**Class Action Suit** [ ] Yes [X] No

**MDJ Appeal** [ ] Yes [X] No

**Money Damages Requested** [X]

**Commencement of Action:**

Complaint

**Amount in Controversy:**

More than $50,000

---

## Case Type and Code

Contract:

Other

**Other:** INSURANCE COVERAGE

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**TO THE DEFENDANT(S):**
You are hereby notified to plead to the enclosed within twenty (20) days from service hereof or a judgment may be entered against you.

*/s/ Mark F. Himsworth*
BY:______________________
MARK F. HIMSWORTH

MARK F. HIMSWORTH, ESQUIRE
IDENTIFICATION NO. 49856
BRITTANY ANN KANE, ESQUIRE
IDENTIFICATION NO. 328136
**HAMBURG, RUBIN, MULLIN, MAXWELL & LUPIN**
1684 S. BROAD STREET, SUITE 230
P.O. BOX 1479
LANSDALE, PA 19446
(215) 661-0400
*mhimsworth@hrmml.com*
*bkane@hrmml.com*

ATTORNEYS FOR PLAINTIFF

IN THE COURT OF COMMON PLEAS
OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACITON – LAW

| | | |
|---|---|---|
| CORONADO'S POOL PLASTER INC<br>668 COUNTY LINE ROAD<br>TELFORD, PA 18969<br>*Plaintiff,*<br>v.<br><br>THE HARTFORD INSURANCE GROUP, INC.<br>1 Hartford Plaza<br>Hartford, CT 06155<br>*and*<br>MAXUM INDEMNITY COMPANY<br>3655 North Point Parkway, Suite 400<br>Alpharetta, GA 30005<br>*Defendants.* | : | NO.: |

**COMPLAINT**

Plaintiff, Coronado's Pool Plaster Inc., by and through its counsel, Hamburg, Rubin, Mullin, Maxwell & Lupin, P.C., hereby files this Complaint against Defendants, The Hartford Insurance Group, Inc. and Maxum Indemnity Company, in breach of contract and statutory bad faith pursuant to 42 Pa. C.S. § 8371, and, in support thereof, avers as follows:

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**PARTIES**

1. Plaintiff, Coronado's Pool Plaster Inc. (hereinafter, "Coronado's" or the "Plaintiff"), is a Pennsylvania corporation with a principal place of business located at 668 County Line Road, Telford, Montgomery County, Pennsylvania 18969.

2. Defendant, The Hartford Insurance Group, Inc. (hereinafter, "Hartford"), is a Connecticut insurance company with a principal place of business located at 1 Hartford Plaza, Hartford, Hartford County, Connecticut 06155.

3. Defendant, Maxum Indemnity Company (hereinafter, "Maxum" and collectively with Hartford, the "Defendants"), is a Georgia insurance company, and a subsidiary of Hartford, with a principal place of business located at 3655 North Point Parkway, Suite 400, Alpharetta, Fulton County, Georgia 30005.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper in the Commonwealth of Pennsylvania pursuant to Pennsylvania Rule of Civil Procedure No. 2179(a)-(b), as jurisdiction in an action on an insurance policy against an insurance company is proper in the Commonwealth of Pennsylvania when the insurance company does business in Pennsylvania.

5. Venue is proper in the Court of Common Pleas of Montgomery County as this action may be brought in any county in which the insurance company regularly conducts business, where the cause of action arose, where the occurrence took place, and/or where the insured property is located. Pa.R.C.P. No. 2179(a)-(b).

6. In the instant action, Defendants are insurance companies which regularly conduct business in Montgomery County, Pennsylvania and the cause of action arose in Montgomery

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

County, Pennsylvania, and, accordingly, both jurisdiction and venue are proper before this Honorable Court.

**FACTUAL BACKGROUND**

7. For over twenty (20) years, Coronado's has operated as a local, family-owned company in the business of plastering and renovating pools for its customers across Pennsylvania, New Jersey, and Delaware.

8. On or about April 12, 2025, Coronado's entered into an agreement to purchase general liability coverage insurance from Defendants (hereinafter, the "Insurance Agreement") (*See* Insurance Agreement, attached hereto as Exhibit "A").

9. As it relates to the general scope of coverage, the Insurance Agreement reads as follows:

> "[Defendants] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Defendants] will have the right and duty to defend the insured against any 'suit' seeking those damages"

(*See* Exhibit "A" at § I (1)(a)).

10. In relevant part, the Insurance Agreement further contains a series of exclusions, and exceptions to those exclusions, as it relates to certain types of property damage:

> "This insurance does not apply to . . . [t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it . . . . [However,] this exclusion does not apply to 'property damage' included in the 'products completed operations hazard.'"

(*See* Exhibit "A" at § I (2)(j)(6)).

11. In turn, the "products-completed operations hazard" exception to the exclusion from property damage coverage explicitly allows for coverage when the claim at issue involves work that has already been completed, and is defined as follows:

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

"'Products-completed operations hazard':

a. Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed"

(*See* Exhibit "A" at § V (16)).

12. On or about September 8, 2025, Coronado's was sued by Jerry Pickett (hereinafter, "Pickett") in the matter captioned *Jerry Pickett v. Coronados Pool Plaster Inc*, Montgomery County C.C.P. No. 2025-19921 (hereinafter, the "underlying action" or "*Pickett v. Coronado's*"), based upon claims arising out of allegations of negligence, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (hereinafter, the "UTPCPL"), violation of the Pennsylvania Home Improvement Consumer Protection Act (hereinafter, the "HICPA"), breach of contract, unjust enrichment, and breach of warranty (*See Pickett v. Coronado's* Complaint, attached hereto as Exhibit "B").

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

13. In Pickett's Complaint, Pickett alleged that she first hired Coronado's in 2023 to (a) remove the old tiling from the pool and install a new mortar bed and marbled blue tile around the perimeter of the pool; (b) install a new white plaster finish around the surface area of the pool and to install new drain covers and fittings; and (c) ensure the proper application of the plaster finish and new tiling on the surface area, perimeter, and other areas of the pool and/or property (*See* Exhibit "B" at ¶ 19).

14. Pickett further alleged that after a series of purported issues with the 2023 agreement, she and Coronado's entered into a new agreement in 2024, under which Coronado's was to be responsible for the (a) removal and hauling away of all concrete materials in the backyard, side yard, and other areas of Pickett's property; (b) installation and securing of a new cantilevered, concrete deck around the pool perimeter; (c) installation of a new sidewalk and gravel; and (d) extension of the downspout (*See id.* at ¶ 33).

15. Corollary to the work that was to be performed under her agreements with Coronado's, Coronado's had to drain the pool of any existing water to perform the work, despite the vast majority of the work taking place outside of the pool itself (*See id.* at ¶ 38).

16. In turn, Pickett alleged that Coronado's completed the draining of the pool and clearing of the debris on or about April 1, 2025, but could not finalize the project due to additional items being required (*See id.* at ¶ 39-40).

17. Pickett alleged that since May 9, 2025, Coronado's completed no further work on Pickett's property (*See id.* at ¶ 49).

18. On or about May 16, 2025, Pickett purportedly discovered "that the entire in-ground pool had become dislodged, raised, and elevated well above-ground level" (*See id.* at ¶ 52).

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

19. Pickett explained that this was so far outside of the scope of the project undertaken that "[a]t no point had something like this been contemplated by Plaintiffs, and at no time did Coronados or any of its employees, agents, representatives, and/or assigns advised Plaintiff that this was a possibility in the midst of any work contemplated under the 2023 Contract and/or the 2024 Contract" (*See* Exhibit "B" at ¶ 54).

20. After a third-party representative observed the purported damage, the representative allegedly explained that the damage was purportedly the result of a failure to pull the pool's hydrostatic plugs prior to the draining of the pool, which now created a catastrophic event which would require the "remov[al] and replace[ment of] the entire pool, as well as a complete removal and re-installation of any plaster, tiling, concrete, and/or other attendant structures surrounding the pool" (*See id.* at ¶¶ 60-61).

21. Earlier, before the *Pickett v. Coronado's* litigation was formally filed, Coronado's requested that Defendants defend and indemnify Coronado's in accordance with the terms of the Insurance Agreement in the event that suit was commenced by Pickett.

22. On or about June 3, 2025, Defendants formally denied Coronado's request to defend and indemnify it in the impending litigation.

23. In preliminary denying coverage, Defendants stated that coverage was precluded because:

> "As previously discussed, the captioned matter arises out of a pool renovation at claimant's residence located in 743 Elm Street, Hatfield, Pennsylvania. You were hired by the claimant on or about 7/11/23 to renovate a pool at the claimant's home. It is our understanding that [when] the pool plaster was applied the pool shell lifted and shifted off the ground after a week of rain. As advised above, based on the current case law in the state of Pennsylvania, construction defect or faulty workmanship does not constitute an 'occurrence,' therefore there cannot be coverage for this claim. In addition, property damage claims caused by land subsidence, are excluded by the policy. Subsidence, in this case applies to the shifting and rising of the pool shell.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> The policy does not afford coverage for any damages which do not fall within the policy definitions of 'bodily injury' or 'property damage' caused by an 'occurrence.' Damage or loss of use is not covered in the absence of an occurrence of consequential damage attributed to the insured's negligence. If the damage simply involves the removal, repair or replacement of the Insured's work it is not covered. Nor is there coverage if there is no property damage, but in order to repair or replace property other than the Insured's work, property has to be removed.
>
> Claims of purely economic loss due to alleged failure of your work to meet the homeowner's quality standards are not property damages covered by the policy. Other economic losses not covered under the policy include delay damages, cost overruns and property impaired in value or use due to workmanship issues"

(*See* June 3, 2025 Correspondence from Defendants, attached hereto as Exhibit "C").

24. On or about September 26, 2025, after Pickett's Complaint was formally filed, Defendants once more denied Coronado's request to defend and indemnify it in the underlying litigation, stating that:

> "As set forth above, the Policy provides coverage for damages because of 'property damage' caused by an 'occurrence.' The policy defined 'occurrence' to mean an 'accident.' In the absence of an 'occurrence,' there is no coverage under the Policy. In their complaint, the Plaintiffs make a claim for the costs associated with removing and replacing the pool shell that lifted and shifted off the ground because Coronado allegedly failed to property drain the pool and did not remove the hydostatic plugs in the pool as necessary. Allegations of damages relates to Coronados' faulty acts or omissions in its renovation and work on the Plaintiffs' pool do not come within the Insuring Agreement of the Policy because they do not constitute 'property damage' caused by an 'occurrence.' Because there are no claims for 'property damage' caused by an 'occurrence,' there is no coverage and Maxum does not have a duty to defend or indemnity Coronado in the lawsuit.
>
> In addition, evndece if the lawsuit alleged claims for 'property damage' caused by an 'occurrence' (which it does not), the Policy contains exclusions that would apply to exclude coverage. For example, the Policy contains a land subsidence exclusion, which excludes damages directly or indirectly arising out of or caused by the settling, sinking, slipping, falling away, shifting, rising, tilting, or any other movement of land or earth. The damages the Plaintiffs allege in their lawsuit are for the pool shell dislodging and elevating from the ground and are therefore excluded under the Policy. The Policy also contains an exclusion for property damage to '[t]hat particular part fo real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are perofrming operations, if the 'property damage' arises out of those operations' and for '[t]hat

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

> particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.' Because the claims is for damage to property that Coronado pool was performing work on, these exclusions may also apply to preclude coverage"

(*See* September 26, 2025 Correspondence from Defendants, attached hereto as Exhibit "D").

25. Accordingly, Coronado's now brings the instant action, in breach of contract and statutory bad faith, predicated upon Defendants' refusal to tender a defense and indemnification, despite the clear language of the Insurance Agreement obligating them to do so.

**COUNT I – BREACH OF CONTRACT**
**Coronado's Pool Plaster Inc v. The Hartford Insurance Group, Inc. & Maxum Indemnity Company**

26. Coronado's incorporates the preceding paragraphs of its Complaint as if fully set forth at length herein.

27. Coronado's has complied with all terms and conditions of the Insurance Agreement with Defendants.

28. At the time of the incident in question, Coronado's was insured under the Insurance Agreement.

29. Defendants have failed to objectively and fairly evaluate Coronado's claim.

30. Defendants have failed to reasonably and property investigate Coronado's claim.

31. Defendants have failed to address arguments set forth by Coronado's relating to the claim.

32. As an insured under the Insurance Agreement, Defendants owed Coronado's a fiduciary, contractual, and statutory obligation to provide Coronado's a defense and coverage for the claims set forth in the matter captioned *Jerry Pickett v. Coronados Pool Plaster Inc*, Montgomery County C.C.P. No. 2025-19921 (*See* Exhibit "B," *generally*).

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

33. Defendants' failure to defend and indemnify Coronado's in the underlying action constitutes a breach of contract.

34. As a result of Defendants' breach, Coronado's has incurred damages which continue to accrue.

35. These damages include the costs incurred by Coronado's to defend itself.

**WHEREFORE**, Plaintiff, Coronado's Pool Plaster Inc, respectfully requests that this Honorable Court grant judgment in its favor and against Defendants, The Hartford Insurance Group, Inc. and Maxum Indemnity Company, in an amount in excess of $50,000.00, together with costs, pre-judgment interest, attorney's fees, and any such other relief that this Honorable Court deems just, necessary, and proper.

**COUNT II – BAD FAITH (42 Pa.C.S. § 8371)**
**Coronado's Pool Plaster Inc v. The Hartford Insurance Group, Inc. & Maxum Indemnity Company**

36. Coronado's incorporates the preceding paragraphs of its Complaint as if fully set forth at length herein.

37. In an action arising under an insurance policy, the court may, pursuant to Pennsylvania's Insurance Bad Faith Statute, take all of the following actions if it finds that the insurer has acted in bad faith toward the insured:

a. Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%;
b. Award punitive damages against the insurer; and/or
c. Assess court costs and attorney's fees against the insurer.

*See* 42 Pa.C.S. § 8371.

38. Defendants' actions in handling Coronado's insurance claim, as more fully set forth, *supra*, constitute bad faith toward the insured in violation of 42 Pa.C.S. § 8371. *See also*

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

*Berg v. Nationwide Mut. Ins. Co.*, 44 A.3d 1164, 1170 (Pa. Super. 2012) (acknowledging that the "Supreme Court has long recognized that the utmost fair dealing should characterize the transactions between an insurance company and the insured[,]" and that 'the insurance company has a duty to deal with its insured on a fair and frank basis, and at all times, to act in good faith") (internal citations omitted).

39. In furtherance of its bad faith, Defendants, acting by and through its duly authorized agents, servants, workmen or employees, has engaged in the following conduct:

a. Failing to objectively and fairly evaluate Coronado's claim;
b. Failing to reasonably or property investigate Coronado's claim;
c. Engaging in dilatory and abusive claims handling;
d. Failing to adopt or implement reasonable standards in evaluating Coronado's claim;
e. Acting unreasonably and unfairly in response to Coronado's claim; and
f. Violating their duty to Coronado's as an insured under the Insurance Agreement.

40. Defendants had a fiduciary, contractual and statutory obligation to reasonably, promptly, and equitably evaluate Coronado's claims, and to defend and indemnify Coronado's. *See Burchick Constr. Co. v. Harleysville Preferred Ins. Co.*, 2014 Pa. Super. Unpub. LEXIS 909 (Mar. 10, 2014) (asserting that under Pennsylvania law, "the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy[,]" and that a court "must examine the complaint in the underlying action to ascertain if it triggers coverage") (emphasis in original).

41. For all of the reasons set forth, *supra*, Defendants have (1) violated the terms of the Insurance Agreement; (2) violated their obligations as insurers; (3) failed to act in good faith in evaluating Coronado's claims; and (4) violated 42 Pa.C.S. § 8371.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

42. Accordingly, Defendants, pursuant to 42 Pa.C.S. § 8371, are liable for compensatory and punitive damages, together with interest, attorney's fees, court costs, and such other relief that this Honorable Court deems just, necessary, and proper.

43. Pursuant to 42 Pa.C.S. § 8371, punitive damages are warranted and demanded in the instant action.

**WHEREFORE**, Plaintiff, Coronado's Pool Plaster Inc, respectfully requests that this Honorable Court grant judgment in its favor and against Defendants, The Hartford Insurance Group, Inc. and Maxum Indemnity Company, in an amount in excess of $50,000.00, together with costs, pre-judgment interest, punitive damages, attorney's fees, and any such other relief that this Honorable Court deems just, necessary, and proper.

Respectfully submitted,

HAMBURG, RUBIN, MULLIN,
MAXWELL & LUPIN

*/s/ Mark F. Himsworth*
By:________________________
MARK F. HIMSWORTH
BRITTANY ANN KANE

Date: June 1, 2026

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**VERIFICATION**

I, Byron Donis, Project Manager at Coronado's Pool Plaster, Inc., verify that the statements made in the foregoing *Complaint* are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities.

Date: 6-1-26

Byron Donis, *Project Manager*
*Coronado's Pool Plaster, Inc.*

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "A"

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**From:** Smith, Omar (Fin Lines, Liab + Bond Claims) <Omar.Smith@thehartford.com>
**Sent:** Wednesday, April 29, 2026 9:15 AM
**To:** Mark Himsworth <mhimsworth@hrmml.com>
**Cc:** Kelly DiBonaventure <kdibonaventure@hrmml.com>
**Subject:** RE: Coronados Pool Plaster Inc. Maxum#BDG-3108499-01-01-01

Hi Mark,

The insured should also have a copy of their policy, but I also have a copy of policy and endorsement attached.

Regards

*Omar Smith*
Claims Specialist
Complex Claims Unit

**Navigators**
A Brand of The Hartford
One Hartford Plaza, T14
Hartford, CT 06155
Direct 212-553-8798
E-mail: omar.smith@thehartford.com

www.thehartford.com/navigators

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

MAXUM
A Company of The Hartford

# Insurance Policy for:
# Coronados Pool Plaster Inc

Maxum Indemnity Company
3655 North Point Parkway,
Suite 500
Alpharetta, Georgia 30005
Telephone: 678 597 4500
Fax: 678 597 4501

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## Common Policy Conditions

**All Coverage Parts included in this policy are subject to the following conditions:**

### A) CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.
2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.
3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.
4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.
5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.
6. If notice is mailed, proof of mailing will be sufficient proof of notice.

### B) CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

### C) EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

### D) INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and survey at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization that makes insurance inspections, surveys, reports or recommendations.

### E) PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.

### F) TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IN WITNESS WHEREOF, Maxum Indemnity Company has caused this policy to be signed by its President and Secretary at Alpharetta, Georgia, but it is not binding unless signed on the Declarations Page by our Authorized Representative.

Secretary

President

PJ (01/2003)

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# COMMON POLICY DECLARATIONS

Policy No.: BDG-3108499-01

| MAXUM INDEMNITY COMPANY<br>3655 North Point Parkway, Suite 500<br>Alpharetta, Georgia 30005 | RSG Specialty LLC (Richmond, VA)<br>9020 Stony Point Parkway<br>Suite 450<br>Richmond, VA 23235 |
|---|---|

NAMED INSURED: Coronados Pool Plaster Inc

MAILING ADDRESS: 668 County Line Rd
Telford, PA 18969

POLICY PERIOD: From 4/12/2025 TO 4/12/2026 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS SHOWN ABOVE.

BUSINESS DESCRIPTION: Pool Plastering

***IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE STATED IN THIS POLICY.***

**THIS POLICY CONSISTS OF THE FOLLOWING COVERGE FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.**

| | | | PREMIUM |
|---|---|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | | | $7,484.00 |
| COMMERCIAL INLAND MARINE COVERAGE PART | | | Not covered |
| COMMERCIAL PROPERTY COVERAGE PART | | | Not covered |
| COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART | | | Not covered |
| Federal Terrorism Risk Insurance Act | | | Rejected/No Coverage |
| | | Premium Total: | $7,484.00 |
| *Other Charges:* | | | $619.52 |
| Policy Fee | $300.00 | | |
| Inspection Fee | $75.00 | | |
| Stamping Fee | $20.00 | | |
| Surplus Lines Tax | $224.52 | | |
| | | Total: | $8,103.52 |

Audit Period: Annual unless otherwise stated.

FORMS APPLICABLE TO ALL COVERAGE PARTS:
Refer to Endorsement E849.

Countersigned: 4/5/2025

AUTHORIZED REPRESENTATIVE

Includes copyrighted material of Insurance Services Office, Inc. with its permission. Copyright, Insurance Services Office, Inc., 1985.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

NAMED INSURED: Coronados Pool Plaster Inc

POLICY PERIOD: 4/12/2025 - 4/12/2026 POLICY NUMBER: BDG-3108499-01

## FORMS AND ENDORSEMENTS SCHEDULE

| FORMS/ENDORSEMENTS APPLICABLE TO ALL COVERAGE PARTS: | | |
|---|---|---|
| PJ | 1/1/2003 | Policy Jacket |
| DECC | 1/1/2003 | Common Policy Declarations |
| E048 | 1/2/2003 | Minimum Earned Premium |
| E1233 | 1/1/2015 | Exclusion - Terrorism |
| E144 | 5/1/2021 | Service of Suit |
| E849 | 3/1/2010 | Forms and Endorsements Schedule |
| IL0021 | 7/1/2002 | Nuclear Energy Liability Exclusion (Broad Form) |
| IL0246 | 9/1/2007 | Pennsylvania Changes - Cancellation and Nonrenewal |
| IL0910 | 7/1/2002 | Pennsylvania Notice |
| MISC001 | 7/1/2023 | Claims Reporting |

| FORMS/ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART: | | |
|---|---|---|
| DECBGL | 7/1/2005 | Commercial General Liability Coverage Part Declarations |
| CG0001 | 12/1/2007 | Commercial General Liability Coverage Form |
| CG2107 | 5/1/2014 | Exclusion - Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability - Limited Bodily Injury Exception Not Included |
| CG2109 | 6/1/2015 | Exclusion - Unmanned Aircraft |
| CG2132 | 5/1/2009 | Communicable Disease Exclusion |
| CG2147 | 12/1/2007 | Employment-Related Practices Exclusion |
| CG2165 | 12/1/2004 | Total Pollution Exclusion With A Building Heating, Cooling And Dehumidifying Equipment Exception And A Hostile Fire Exception |
| CG2167 | 12/1/2004 | Fungi or Bacteria Exclusion |
| CG2426 | 7/1/2004 | Amendment Of Insured Contract Definition |
| E1333 | 7/1/2016 | Exclusion - Designated Operations - Exterior Work On Buildings In Excess Of Certain Height |
| E1381 | 1/1/2017 | Exclusion - Injury To Individuals Performing Duties Related To The Conduct Of Any Insured's Business |
| E1394 | 9/1/2017 | Exclusions/Limitations - Combination Endorsement - Contractors |
| Contains: | | |
| E687 | 09/01/2010 | Exclusion – Asbestos, Silica and Silica Dust |
| E711 | 09/01/2010 | Exclusion – Lead |
| E831 | 09/01/2010 | Exclusion – Breach of Contract |
| E788 | 06/01/2009 | Exclusion – Exterior Insulation and Finish System Work or Direct-Applied Exterior Finish System Work |
| E615 | 01/01/2009 | Exclusion – Land Subsidence |
| E763 | 01/01/2009 | Cross Suits Exclusion |

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## FORMS AND ENDORSEMENTS SCHEDULE Continued

| FORMS/ENDORSEMENTS APPLICABLE TO COMMERCIAL GENERAL LIABILITY COVERAGE PART: | | | |
|---|---|---|---|
| | CG2154 | 01/01/1996 | Exclusion – Designated Operations Covered By A Consolidated (Wrap-Up) Insurance Program |
| | E714 | 08/01/2007 | Exclusion – Unfair Competition |
| | E348 | 01/01/2003 | Amendment - Deposit Premium and Minimum Premium |
| | E704 | 08/01/2007 | Amendment - Premium Audit |
| | E829 | 01/01/2010 | Definition – Damages |
| E1423 | | 8/1/2021 | Exclusion - Firearms or Weapons |
| E1424 | | 3/1/2022 | Residential Construction Operations - Coverage Limitations And Exclusions |
| E1425 | | 1/1/2023 | Continuous and Progressive Injury or Damage Exclusion |
| E1426 | | 5/1/2022 | Contractors - Miscellaneous Professional Liability Coverage |
| E1430 | | 11/1/2022 | Flexible Blanket Additional Insured As Required By Written Contract, Written Agreement Or Written Permit |
| E1432 | | 5/1/2024 | Perfluoroalkyl and Polyfluoroalkyl Substances |
| E617 | | 8/1/2007 | *Liability Deductible Endorsement* |
| E713 | | 8/1/2007 | Exclusion - Punitive or Exemplary Damages |
| E906 | | 12/1/2010 | Amendment-Aggregate Limits of Insurance (Per Project) |
| E908 | | 7/1/2024 | Conditional Coverage-Subcontractors and Independent Contractors |
| E919 | | 2/1/2011 | Blanket Waiver of Transfer of Rights of Recovery Against Others to Us |
| E921 | | 1/1/2023 | Additional Insured-Owners, Lessees or Contractors-Primary and Non-contributory |

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** Issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

---

**Minimum Earned Premium**

---

It is agreed that in the event of cancellation of this policy by the Insured as specified herein, return premium shall be computed at .90 of the pro rata unearned policy premium (or minimum premium if applicable) subject however to a retention by the Company of not less than 25%.

Nothing in this endorsement is deemed to affect the Company's cancellation rights, which remain as, indicated in the form.

It is further agreed that return premium may be allowed on a pro rata basis if cancelled for non-payment, subject however to retention by the Company of the minimum as shown above.

All other terms and conditions of this policy remain unchanged.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective* **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

# EXCLUSION - TERRORISM

**SCHEDULE**

| The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy: | |
|---|---|
| **State(s)** | **Coverage Form, Coverage Part Or Policy** |
| | |
| | |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** The following definitions are added with respect to the provisions of this endorsement:

**1.** "Terrorism" means activities against persons, organizations or property of any nature:

**a.** That involve the following or preparation for the following:

**(1)** Use or threat of force or violence; or

**(2)** Commission or threat of a dangerous act; or

**(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**b.** When one or both of the following applies:

**(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

**(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** "Any injury or damage" means any injury or damage covered under any Coverage Part or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part or Policy.

**B.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for "any injury or damage" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury or damage" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph B. applies only if indicated and as indicated in the Schedule of this endorsement.

If an incident of "terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

---

**SERVICE OF SUIT**

---

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Commissioner, Superintendent or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any Court of competent jurisdiction by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the person listed below as the person to whom said officer is authorized to mail such process or a true copy thereof:

**Doug Elliot**
**President and CEO**
**Maxum Indemnity Company**
**c/o The Hartford**
**One Hartford Plaza**
**Hartford, CT 06155**

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

**(Broad Form)**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   **A.** Under any Liability Coverage, to "bodily injury" or "property damage":

   **(1)** With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   **(2)** Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   **B.** Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   **C.** Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   **(1)** The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

   **(2)** The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

   **(3)** The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

© ISO Properties, Inc., 2001

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**2.** As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

**(a)** Any "nuclear reactor";

**(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

**(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

**(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

© ISO Properties, Inc., 2001

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PENNSYLVANIA CHANGES – CANCELLATION AND NONRENEWAL

*This endorsement modifies insurance provided under the following:*

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** The **Cancellation** Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by writing or giving notice of cancellation.

2. **Cancellation Of Policies In Effect For Less Than 60 Days**

   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least 30 days before the effective date of cancellation.

3. **Cancellation Of Policies In Effect For 60 Days Or More**

   If this policy has been in effect for 60 days or more or if this policy is a renewal of a policy we issued, we may cancel this policy only for one or more of the following reasons:

   a. You have made a material misrepresentation which affects the insurability of the risk. Notice of cancellation will be mailed or delivered at least 15 days before the effective date of cancellation.

   b. You have failed to pay a premium when due, whether the premium is payable directly to us or our agents or indirectly under a premium finance plan or extension of credit. Notice of cancellation will be mailed at least 15 days before the effective date of cancellation.

   c. A condition, factor or loss experience material to insurability has changed substantially or a substantial condition, factor or loss experience material to insurability has become known during the policy period. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

   d. Loss of reinsurance or a substantial decrease in reinsurance has occurred, which loss or decrease, at the time of cancellation, shall be certified to the Insurance Commissioner as directly affecting in-force policies. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

© ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

e. Material failure to comply with policy terms, conditions or contractual duties. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

f. Other reasons that the Insurance Commissioner may approve. Notice of cancellation will be mailed or delivered at least 60 days before the effective date of cancellation.

This policy may also be cancelled from inception upon discovery that the policy was obtained through fraudulent statements, omissions or concealment of facts material to the acceptance of the risk or to the hazard assumed by us.

4. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. Notice of cancellation will state the specific reasons for cancellation.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata and will be returned within 10 business days after the effective date of cancellation. If the first Named Insured cancels, the refund may be less than pro rata and will be returned within 30 days after the effective date of cancellation. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

B. The following are added and supersede any provisions to the contrary:

1. **Nonrenewal**

   If we decide not to renew this policy, we will mail or deliver written notice of nonrenewal, stating the specific reasons for nonrenewal, to the first Named Insured at least 60 days before the expiration date of the policy.

2. **Increase Of Premium**

   If we increase your renewal premium, we will mail or deliver to the first Named Insured written notice of our intent to increase the premium at least 30 days before the effective date of the premium increase.

Any notice of nonrenewal or renewal premium increase will be mailed or delivered to the first Named Insured's last known address. If notice is mailed, it will be by registered or first class mail. Proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;
2. Consultation or advice; or
3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

**Instruction to Policy Writers**

Attach the Pennsylvania Notice to all new and renewal certificates insuring risks located in Pennsylvania.

 © ISO Properties, Inc., 2001

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Commercial General Liability Coverage Part Declarations

**Policy No:** BDG-3108499-01

Effective Date: 4/12/2025 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

NAMED INSURED: Coronados Pool Plaster Inc

**LIMITS OF INSURANCE**

| | |
|---|---|
| General Aggregate Limit | $2,000,000 |
| Products-completed Operations Aggregate Limit | Subject to General Aggregate |
| Personal and Advertising Injury Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Damage to Premises Rented to You Limit | $100,000 Any One Premise |
| Medical Expense Limit | $5,000 Any One Person |

**DESCRIPTION OF BUSINESS**

Form of Business:

☐ Individual ☐ Partnership ☐ Joint Venture ☐ Trust ☐ Limited Liability Corporation

☒ Organization, including a corporation (but not including a partnership, joint venture, trust, or limited liability company)

Location(s) (including Zip Code) of All Premises You Own, Rent or Occupy

668 County Line Road, Telford, PA 18969-2102

**CLASSIFICATION AND PREMIUM**

| | | | Rate | | Advance Premium | |
|---|---|---|---|---|---|---|
| Classification | Code No. | Premium Basis* | Pr/CO | All Other | Pr/CO | All Other |
| Location # 1 | | | | | | |
| Swimming Pools - installation, servicing, or repair - below ground | 99507-1 | s 700,000 | INCL | 10.691 | INCL | $7,484.00 |

See DECBGLS (07-05) for continuation of table

*See backside of DECBGL for definitions

**Total Advance Premium: $7,484.00**

**FORMS AND ENDORSEMENTS** (other than applicable Forms and Endorsements shown elsewhere in this policy)

Forms and endorsements applying to this Coverage Part and made a part of this policy at time of issue:

Refer to Endorsement E849.

THESE DECLARATIONS AND THE COMMON POLICY DECLARATIONS, IF APPLICABLE, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyrighted material of Insurance Services Office, Inc., with its permission. Copyright, Insurance Services Office, Inc., 1985

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently then non-confidential information and documents.

When used as a premium base:

"Area" (premium basis symbol a) means:

The total number of square feet of floor space at the insured premises, computed as follows:

1. For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:
   a. Courts and mezzanine types of floor openings.
   b. Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.
2. For tenants, determine the area they occupy in the same manner as for the entire buildings.
3. *The rates apply per 1,000 square feet* of area.

"Total Cost" (premium basis symbol c) means:

The total cost of all work let or sublet in connection with each specific project including:

1. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work; however, do not include the cost of finished equipment installed but not finished by the subcontractor if the subcontractor *does no other work on or in connection with such equipment;* and
2. All fees, bonuses or commissions made, paid or due.
3. The rates apply per $1,000 of total cost.

"*Admissions*" (*premium basis symbol m*) means:

The total number of persons, other than employees or the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

The rates apply per 1,000 admissions.

"Payroll" (premium basis symbol p) means:

1. Commissions;
2. Bonuses;
3. Extra pay for overtime work, in accordance with the manuals in use by us;
4. Pay for holidays, vacations or periods of sickness;
5. Payment by an employer of amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as the Federal Social Security Act;
6. Payment to employees on any basis other than time worked, such as piecework, profit-sharing or incentive plans;
7. Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations to the insured;
8. *The rental value of an apartment or a house provided for an employee based* on comparable accommodations;
9. The value of lodging, other than an apartment or house, received by employees *as part of their pay, to the extent shown* on the insured's records;
10. The value of meals received by employees as part of their pay to the extent shown in the insured's records.
11. The value of store certificates, merchandise, credits or any other substitute for money received by employees as part of their pay;
12. The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators *and their helpers are provided to the insured along* with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire of the equipment.
13. The payroll of executive officers of a corporation and individual insureds and co-partners. For the purposes of payroll determination, managers of limited liability companies shall be considered executive officers and members of limited liability companies shall be considered co-partners.

    The executive officers of a corporation are those persons *holding any of the* officer positions created by the named insured's charter, constitution or by-laws or any other similar governing document.

    *The payroll of all executive officers of a corporation and individual insureds or* co-partners engaged principally in clerical operations or as salespersons, and officers and co-partners who are inactive for the entire policy period, shall be included for premium purposes.

    *For part-time or seasonal businesses the payroll amounts may be reduced by 2* percent for each full calendar week in excess of twelve during which the risk performs no operations.
14. The payroll *of leased workers furnished to the named insured by a labor leasing* firm. Premium on such payroll shall be based on the classifications and rates which would have applied if the leased workers had been the direct employees *of the named insured. If payroll is unavailable*, use 100% of the total cost of the contract of leased workers as the payroll of leased workers. The premium shall be charged on that amount as payroll.

    *If investigation of a specific employee* leasing contract discloses that a definite amount of the contract price represents payroll, such amount shall be considered payroll for premium computation purposes.
15. Fees paid to employment agencies for temporary personnel provided to the insured.

Payroll does not include:

1. Tips and other gratuities received by employees;
2. *Payments by an employer to group* insurance or group pension plans for employees in accordance with the manuals in use by us;
3. *The value of special rewards for individual invention or discovery;*
4. Dismissal or severance payments except for time worked or accrued vacation;
5. The payroll of clerical office employees. Clerical office employees are those employees who work in an area which is physically separated by walls, floors or partitions from all other work areas of the insured and whose duties are *strictly* limited to keeping the insured's books or records or conducting correspondence, including any other employees engaged in clerical work in the same area;
6. The payroll of salesmen, *collectors or messengers who work principally away* from the insured's premises.

   Salesmen, collectors or messengers are those employees engaged principally in *any such duties away* from the premises of the employer;

   Exception: This term does not apply to any employee whose duties include the delivery of any merchandise handled, treated or sold.
7. The payroll of drivers and their helpers if their principal duties are to work on or in connection with automobiles.
8. The payroll of aircraft pilots or co-pilots if their principal duties are to work on or in connection with aircraft in either capacity.
9. The payroll of draftsmen, *if their duties are limited to office work only*, and who are engaged strictly as draftsmen in such a manner that they are not exposed to the operative hazards of the business.

The rates apply per $1,000 of payroll.

"Overtime"

1. Definition

   Overtime means those hours worked for which there is an increase in the rate of pay:
   a. For work in any day or in any week in excess of the number of hours normally worked; or
   b. *For hours worked in excess of 8 hours in any day or 40 hours in any week;* or
   c. For work on Saturdays, Sundays or holidays.

   *In the case of guaranteed wage agreements*, overtime means only those hours worked in excess of the number specified in such agreement.
2. Exclusion Of Overtime Payroll

   The extra pay for overtime shall be excluded from the payroll on which premium is computed as indicated in (1) or (2), provided the *insured's books and records* are maintained to show overtime pay separately by employee and in summary by classification.
   a. *If the records show separately the extra pay earned for overtime*, the entire extra pay shall be excluded.
   b. If the records show the total pay earned for overtime (regular pay plus overtime pay) in one combined amount, 1/3 of this total pay shall be excluded. If double time is paid for overtime and the total pay for such overtime is recorded separately, ½ of the total pay for double time shall be excluded.

   Exclusion of overtime pay does not apply to payroll *assigned to the* "Stevedoring" classifications.

"Gross Sales" (premium basis symbol s) means:

1. The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
   (a) All goods or products, sold or distributed;
   (b) Operations performed during the policy period;
   (c) Rentals; and
   (d) Dues and fees.
2. Inclusions

   *The following items shall not be deducted from the gross sales:*
   (a) Foreign exchange discounts;
   (b) Freight allowance to customers;
   (c) *Total sales of consigned goods and* warehouse receipts;
   (d) Trade or cash discounts;
   (e) Bad debts; and
   (f) Repossession of items sold on installments (amount actually collected).
3. Exclusion

   The following items shall be deducted from gross sales:
   (a) Sales or excise taxes which are collected and submitted to a governmental division;
   (b) Credits for repossessed merchandise and products returned. Allowances for damaged and spoiled goods;
   (c) *Finance charges for items sold on installments;*
   (d) Freight charges on sales if freight is charged as a separate item on customer's invoice;
   (e) Royalty income from patent rights or copyrights which are not product sales; and
   (f) Rental receipts from products liability coverage only.

The rates apply per $1,000 of gross sales.

"*Units*" (premium basis symbol u) means:

A single room or group or rooms intended for occupancy as separate living quarters by a family by a group of unrelated persons living together, or by a person living alone. *The rates apply per each unit.*

"Each" (premium basis symbol t) means:

Each unit exposure as defined in the classification footnotes.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# Commercial General Liability Coverage Part Declarations

**Policy No:** BDG-3108499-01

Effective Date: 4/12/2025 AT 12:01 A.M. STANDARD TIME AT YOUR MAILING ADDRESS

NAMED INSURED: Coronados Pool Plaster Inc

**Classification and Premium table continued**

| Classification | Code No. | Premium Basis* | Rate Pr/CO | Rate All Other | Advance Premium Pr/CO | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Swimming Pools - Installation, servicing, or repair - above ground | 99506 | If Any | INCL | 12.347 | If Any | If Any |
| E1430 Flexible Blanket Additional Insured As Required By Written Contract, Written Agreement Or Written Permit - Limit (Fully Earned) | | | | | | INCL |
| E906 Amendment-Aggregate Limits of Insurance (Per Project) - Limit (Fully Earned) | | | | | | INCL |
| E921 Additional Insured-Owners, Lessees or Contractors-Primary and Non-contributory - Limit (Fully Earned) | | | | | | INCL |
| E919 Blanket Waiver of Transfer of Rights of Recovery Against Others to Us - Limit (Fully Earned) | | | | | | INCL |

*See backside of DECBGL for definitions

**Total Advance Premium: $7,464.00**

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently then non-confidential information and documents.

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. *Expected Or Intended Injury***

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

 © ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

(a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

(b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

 © ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

**(3)** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

   b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   e. All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

      (1) Agrees in writing to:

         (a) Cooperate with us in the investigation, settlement or defense of the "suit";

         (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

         (c) Notify any other insurer whose coverage is available to the indemnitee; and

         (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

      (2) Provides us with written authorization to:

         (a) Obtain records and other information related to the "suit"; and

 © ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

 © ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in Paragraph a. above;

      (2) The activities of a person whose home is in the territory described in Paragraph a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

   However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

 © ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION AND DATA-RELATED LIABILITY – LIMITED BODILY INJURY EXCEPTION NOT INCLUDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **2.p.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Access Or Disclosure Of Confidential Or Personal Information And Data-related Liability**

Damages arising out of:

**(1)** Any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** The loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph **(1)** or **(2)** above.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**B.** The following is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

 © Insurance Services Office, Inc., 2013

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNMANNED AIRCRAFT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion **2.g. Aircraft, Auto Or Watercraft** under **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**g. Aircraft, Auto Or Watercraft**

**(1) Unmanned Aircraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This Paragraph **g.(1)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

**(2) Aircraft (Other Than Unmanned Aircraft), Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This Paragraph **g.(2)** applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft (other than "unmanned aircraft"), "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This Paragraph **g.(2)** does not apply to:

**(a)** A watercraft while ashore on premises you own or rent;

**(b)** A watercraft you do not own that is:

**(i)** Less than 26 feet long; and

**(ii)** Not being used to carry persons or property for a charge;

**(c)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(d)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

 © Insurance Services Office, Inc., 2014

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(e) "Bodily injury" or "property damage" arising out of:

(i) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

(ii) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Unmanned Aircraft**

"Personal and advertising injury" arising out of the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft". Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the offense which caused the "personal and advertising injury" involved the ownership, maintenance, use or entrustment to others of any aircraft that is an "unmanned aircraft".

This exclusion does not apply to:

**a.** The use of another's advertising idea in your "advertisement"; or

**b.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**C.** The following definition is added to the **Definitions** section:

"Unmanned aircraft" means an aircraft that is not:

**1.** Designed;

**2.** Manufactured; or

**3.** Modified after manufacture;

to be controlled directly by a person from within or on the aircraft.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Bodily injury" or "property damage" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Communicable Disease**

"Personal and advertising injury" arising out of the actual or alleged transmission of a communicable disease.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the:

**a.** Supervising, hiring, employing, training or monitoring of others that may be infected with and spread a communicable disease;

**b.** Testing for a communicable disease;

**c.** Failure to prevent the spread of the disease; or

**d.** Failure to report the disease to authorities.

 © Insurance Services Office, Inc., 2008

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

*This exclusion applies:*

**(1)** Whether the injury-causing event described in *Paragraphs* **(a)**, **(b)** or **(c)** *above occurs before* employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

*This exclusion applies:*

**(1)** Whether the injury-causing event described in *Paragraphs* **(a)**, **(b)** or **(c)** *above occurs before* employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

 © ISO Properties, Inc., 2006

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION WITH A BUILDING HEATING, COOLING AND DEHUMIDIFYING EQUIPMENT EXCEPTION AND A HOSTILE FIRE EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

*Exclusion* **f.** *under Paragraph* **2. Exclusions** *of* **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

**(a)** "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

**(b)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

**(i)** At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

**(ii)** At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

 © ISO Properties, Inc., 2003

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

POLICY NUMBER: BDG-3108499-01

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

 © ISO Properties, Inc., 2004

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective* **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

## EXCLUSION – DESIGNATED OPERATIONS – EXTERIOR WORK IN EXCESS OF CERTAIN HEIGHT

The following exclusion is added to the Policy:

**This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" or medical expense arising out of or resulting from exterior work performed on any *building or structure*, where such exterior *work* is *performed* at a height in excess of 30 feet or three stories, whichever is less, regardless of whether such exterior work is conducted by you or on your behalf, or whether such exterior work is conducted for yourself or for others.**

All other terms, conditions and exclusions on the Policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at **12:01 A.M. Standard time**, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

## EXCLUSION – INJURY TO INDIVIDUALS PERFORMING DUTIES RELATED TO THE CONDUCT OF ANY INSURED'S BUSINESS

SECTION I – COVERAGES, COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, e. Employer's Liability, of the Policy is deleted in its entirety and replaced with the following:

e. Injury to Individuals as Described Below

"Bodily injury" to:

(1) An "employee," "leased worker," "temporary worker" or "volunteer worker" of "any insured" arising out of or resulting from:

(a) Employment by "any insured;" or

(b) Performing duties related to the conduct of "any insured's" business;

(2) Any "employee," "leased worker," "temporary worker" or "volunteer worker" of any contractor, subcontractor or independent contractor contracted with "any insured" for services or contracted with others on "any insured's" behalf;

(3) Any "employee," "leased worker," "temporary worker" or "volunteer worker" of any person or organization that is performing duties related to the conduct of "any insured's" business;

(4) Any person contracted with "any insured" or contracted with others on "any insured's" behalf, arising out of or resulting from performing duties related to "any insured's" business;

(5) Any person performing work that "any insured" has the authority to control or supervise regardless of whether that person is an "employee," "leased worker," "temporary worker" or "volunteer worker" of "any insured" or any other person or organization, and regardless of whether such person contracted with "any insured";

(6) The spouse, child, parent, brother or sister of any of these persons as a consequence of "bodily injury" described in paragraphs 1-5 above.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

This exclusion applies:

(A) Whether "any insured" may be liable as an employer or in any other capacity;

(B) To any obligation to share damages with, indemnify, hold harmless or repay any other person or entity who incurs any damages, costs, loss or expense arising out of or resulting from any claim for "bodily injury" described in paragraphs 1-6 above;

(C) To any claim for "bodily injury" made against "any insured" or any person or entity qualifying as an additional insured under this Policy regardless of whether the insured seeking coverage is the employer;

(D) To any claim against "any insured" alleging negligence or other wrongdoing by "any insured" in the supervision, hiring, selection, investigation, training, monitoring or retention of any person or organization;

(E) To any liability assumed by "any insured" under an "insured contract."

The "Separation of Insureds" Condition of this Policy does not apply to this exclusion (e).

"Any insured" as used in this endorsement means any person or entity qualifying as an insured under Section II – Who Is an Insured and any person or entity qualifying as an additional insured under any other provision of this Policy.

All other terms, conditions and exclusions of the Policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc by Maxum Indemnity Company.**

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

**EXCLUSIONS/LIMITATIONS – COMBINATION ENDORSEMENT – CONTRACTORS**

---

**EXCLUSION – ASBESTOS, SILICA AND SILICA DUST**

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" arising out of or resulting from:

(1) Asbestos, silica, silica dust, asbestos fibers, asbestiform talc or any material and/or substances containing asbestos, silica, silica dust, asbestos fibers or asbestiform talc or any asbestos, silica or silica dust related "bodily injury" or "property damage," or exposure to asbestos, asbestos fibers, silica, silica dust or asbestiform talc in any form, and/or manifestation of any asbestos, silica or silica dust related "bodily injury," including, but not limited to, asbestosis, lung cancer, pleural thickening, mesothelioma, silicosis, emphysema, pneumoconiosis, pulmonary fibrosis, pleuritis, endothelioma or any other bronchogenic carcinoma or any other "bodily injury", sickness, illness or disease of any kind whatsoever or "property damage" ; or

(2) Any alleged act, error, omission or duty involving silica, silica dust, asbestos, asbestos fibers, asbestiform talc or any material and/or substances containing silica, silica dust, asbestos, asbestos fibers or asbestiform talc, its use, exposure, presence, existence, detection, removal, elimination or avoidance; or

(3) The use, exposure, presence, existence, detection, removal, elimination or avoidance of silica, silica dust, asbestos, asbestos fibers, asbestiform talc or any material and/or substances containing silica, silica dust, asbestos, asbestos fibers or asbestiform talc in any environment, building or structure; or

(4) The existence of asbestos in any form, silica or silica dust, including the cost of investigations or feasibility studies, or the costs of testing, monitoring, abatement, mitigation, cleaning, removal, or disposal of any property or substance; or

(5) Any supervision, instructions, recommendations, warnings or advice given, or which should have been given, in connection with any of the above; or

(6) Any obligation to share "damages" with or repay someone else who must pay "damages" in connection with any of the above.

E687 (09/2010)

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**EXCLUSION – LEAD**

This insurance does not apply to:

"Bodily injury," "property damage," or "personal and advertising injury" arising out of, resulting from, caused by or contributed to by the ingestion, inhalation, absorption or exposure to lead in any form, or any product containing lead, including:

(1) The cost or expense to test for, monitor, abate, encapsulate, mitigate, contain, remove, detoxify or dispose of lead, lead compounds or materials containing lead;
(2) "Damages" relating to supervision, instructions, recommendations, warnings, or advice given, or which should have been given; or
(3) Any obligation to share "damages" with or repay someone else who must pay "damages."

We have no duty to either defend or indemnify any insured for any claim or "suit" to which this exclusion applies.

E711 (09/2010)

**EXCLUSION – BREACH OF CONTRACT**

This insurance does not apply to any claim or "suit" for breach of contract, whether express or oral, nor claims for breach of an implied in law or implied in fact contract, whether "bodily injury", "property damage", "personal and advertising injury" or an "occurrence" is alleged and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" or an "occurrence" directly or indirectly arising out of, caused by, or resulting from breach of contract.

This exclusion also applies to any additional insureds under this policy.

E831 (09/01/2010)

**EXCLUSION – EXTERIOR INSULATION AND FINISH SYSTEM WORK OR DIRECT-APPLIED EXTERIOR FINISH SYSTEM WORK**

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", or "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury", "property damage", or "personal and advertising injury" arising out of any Exterior Insulation and Finish System (hereinafter referred to as ""EIFS") work or any Direct-Applied Exterior Finish System (herein after referred to as "DEFS") work.

This exclusion applies to any "EIFS" or "DEFS" work described in Paragraphs 1. and 2. below performed by any insured or on behalf of any insured.

(1) The design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service or repair, including remolding, correction, replacement or service of any "EIFS" work or any "DEFS" work or any part or portion thereof, or any substantially similar system or any part or portion thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system.
(2) Any design, manufacture, construction, fabrication, preparation, installation, application, maintenance, use, sale, service or repair, including remolding, correction, replacement or service of any exterior component, fixture or feature of any structure if any "EIFS" work, "DEFS" work or substantially similar system is used on any part of that structure.

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

For purposes of this endorsement, an "Exterior Insulation and Finish System" means an exterior cladding or finish system used on any part of any structure, and consisting of any or all of the following:

(a) a rigid or semi-rigid insulation board made of expanded polystyrene or other materials,
(b) the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate,
(c) a reinforced base coat, or
(d) a finish coat providing surface texture and color.

For the purposes of this endorsement, a "Direct—Applied Exterior Finish System" means an exterior cladding or finish system used on any part of any structure, and consisting of any or all of the following:

(a) the adhesive and/or mechanical fasteners used as control joints where system abuts other materials or as expansion joints in the substrate,
(b) a reinforced base coast, or
(c) a finish coat providing surface and color.

We shall have no duty to defend any insured against any loss, claim, "suit," or other proceeding alleging damages arising out of or related to work as described in paragraph 1. and 2. to which this endorsement applies.

E788 (06/2009)

**EXCLUSION – LAND SUBSIDENCE**

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury," "property damage," or "personal and advertising injury" directly or indirectly arising out of, caused by, resulting from, contributed to or aggravated by the depletion or exhaustion of underground resources or subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, mud flow, rising, tilting, or any other movement of land or earth.

E615 (01/01/2009)

**CROSS SUITS EXCLUSION**

This insurance does not apply to any liability of one Named Insured for "bodily injury" or "property damage" to another Named Insured.

E763 (01/01/2009)

**EXCLUSION – DESIGNATED OPERATIONS COVERED BY A CONSOLIDATED (WRAP-UP) INSURANCE PROGRAM**

This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

Description and Location of Operation(s):

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages):

This insurance does not apply to "bodily injury" or "property damage" arising out of either your ongoing operations or operations included within the "products-completed operations hazard" at the location described in the Schedule of this endorsement, as a consolidated (wrap-up) insurance program has been provided by the prime contractor/project manager or owner of the construction project in which you are involved.

This exclusion applies whether or not the consolidated (wrap-up) insurance program:

(1) Provides coverage identical to that provided by this Coverage Part;
(2) Has limits adequate to cover all claims; or
(3) Remains in effect.

CG 21 54 01 96

**EXCLUSION – UNFAIR COMPETITION**

The following exclusion is added to COVERAGE B:
This insurance does not apply to "personal and advertising injury" arising out of unfair competition.

E714 (08/01/2007)

**AMENDMENT – DEPOSIT PREMIUM AND MINIMUM PREMIUM**

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **5. Premium Audit**, subparagraph **b.**, is deleted and replaced by the following:

Premium shown in this Coverage Part as advance premium is both a deposit premium and a minimum premium for the full policy period. At the close of each audit period, we will compute the earned premium for that period. If the earned premium is more than the advance premium, notice of the amount by which it exceeds the advance premium will be sent to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the earned premium is less than the advance premium, the advance premium will apply as the minimum premium, with no return premium payable to you.

E348 (01/01/2003)

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**AMENDMENT – PREMIUM AUDIT**

The following is added to **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**, Paragraph **5. Premium Audit**:

**d.** If the Insured fails to pay the Company for any additional audit premium developed within 30 days after notice is given of the amount due, then the Company will be entitled to collect from the Insured any cost incurred in the collection process. Such cost shall include, but not be limited to, collection agency fees, attorney's fees, court costs and interest.

E704 (08/01/2007)

**DEFINITION – DAMAGES**

The following is added to **SECTION V – DEFINITIONS:**

"Damages" means compensation, only in the form of money, for a person or entity who claims to have suffered "bodily injury" or "personal and advertising injury" or who claims to have sustained "property damage".

E829 (01/01/2010)

*Includes copyrighted material of Insurance Services Office, Inc., with its permission.*

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

POLICY NUMBER: BDG-3108499-01 COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - FIREARMS OR WEAPONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM

The following exclusion is added to the COMMERCIAL GENERAL LIABILITY COVERAGE FORM and the LIQUOR LIABILITY COVERAGE FORM:

A. This insurance does not apply to "bodily injury," "property damage," "personal and advertising injury," or "injury" arising out of, caused by, or resulting from, in whole or in part:

1. The ownership, maintenance, use or misuse by any insured or any other person of any "firearm";
2. The ownership, maintenance, use or misuse by any insured or any other person of any object or instrument used as a "weapon", whether or not it was originally intended, created or designed to be used as a "weapon";
3. Any act, error or omission committed by you or on your behalf in connection with the prevention or suppression of the use of:
   a. Any "firearm";
   b. Any object or instrument used as a "weapon", whether or not it was originally intended, created or designed to be used as a "weapon";
4. The failure of any insured, or any person or legal entity to provide an environment safe from the use of "firearms" or "weapons" whether or not such instrument, object or projectile was originally intended, created or designed to be used as a "weapon" or "firearm", including but not limited to the failure to provide adequate security, or the failure to warn of the dangers of the environment which could contribute in whole or in part to the "bodily injury," "property damage," "personal and advertising injury," or "injury," or the failure to maintain the premises by you, any insured, or any person or legal entity;
5. Any failure or delay in the rendering of proper aid or assistance, reporting to proper authorities, investigating any incident, preserving of any evidence, or otherwise failing to respond properly or timely to any "occurrence" involving a "firearm" or "weapon" regardless of whether or not such instrument, object or projectile was originally intended, created or designed to be used as a "weapon" or "firearm."

E1423 (08/01/21) Includes copyrighted material of Insurance Services office, Inc. with its permission. Page 1 of 2

MAXUM 000051

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

B. This exclusion applies to the foregoing and to any claim or "suit" alleging in whole or in part the foregoing:

1. Whether an act or omission is by, for, or on behalf of an insured, or at the direction of an insured, or by or at the direction of any other person or entity.
2. Whether an act or omission is on premises owned or occupied by an insured, or owned or occupied by any other person or entity;
3. Regardless of the intent or degree of culpability of any insured, or of any other person or entity;
4. Regardless of whether the use or misuse of a "firearm" or "weapon" is a direct cause, and/or a contributory cause of such "bodily injury", "property damage", "personal and advertising injury," or "injury";
5. Regardless of the presence of other allegations in the claim or "suit" which are not excluded by the terms of this endorsement; and
6. Regardless of the legal theory of liability or damages, including but not limited to vicarious liability, violation of any law or statute, criminal act, intentional act or negligence, and including but not limited to causes of action based on hiring, supervision, retention, training, instructing, advising, monitoring, providing security, or implementing procedures and protocols.

C. The following is added to SECTION V – DEFINITIONS

1. "Firearm" means any pistol, rifle, gun or other device capable of expelling or propelling one or more projectiles by the action of an explosive, combustible propellant, or compressed air.
2. "Weapons" means instruments that can be or are utilized in an offensive or defensive nature and include but are not limited to batons, bow or crossbow, arrows, knives, mace, stun guns or swords.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

# RESIDENTIAL CONSTRUCTION OPERATIONS - COVERAGE LIMITATIONS AND EXCLUSIONS

A. The following exclusion is added to **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability, Coverage B - Personal And Advertising Injury Liability** and **Coverage C - Medical Payments:**

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of, resulting from, related to, or in any way connected with, either directly or indirectly, your ongoing operations, "your product", or "your work" performed by or on behalf of any insured, either prior to or during the policy period, that is incorporated into or performed at any of the following construction projects:
   a. Any new townhouse or residential condominium project where the total number of individual "residential housing units" within your project is greater than twenty (20), regardless of the size of the development
   b. Any new residential housing project (also known as a Planned Unit Development (PUD) or tract housing), where the total number of "residential housing units" within your project is greater than twenty (20), regardless of the size of the development
   c. Any conversion of apartments to condominiums or townhouses, regardless of the number of buildings, developments, phases or associations;
2. Costs and expenses to investigate or defend any claim or "suit" related to any of the operations in **A.1.** above; and
3. Payment of any fine or penalty related to any of the operations in **A.1.** above.

However, this exclusion does not apply to "your work" or "your product" performed by or on behalf of any insured that is incorporated into **A.1.a., A.1.b.,** or **A.1.c.** after the issuance of the notice of completion or certificate of occupancy, whichever comes first, unless such work performed is to repair or replace "your work" or "your product" performed by or on behalf of any insured, that was incorporated into **A.1.a., A.1.b.,** or **A.1.c.** prior to the issuance of the notice of completion or certificate of occupancy.

**B.** The following definition is added to the **Definitions** section:

"Residential housing units" means detached single family or multiple family dwellings, duplexes, triplexes, dormitories or any other housing or dwelling built or used, in whole or in part, for the purpose of residential occupancy. For the purpose of this endorsement, each duplex will be considered two residential housing units, each triplex will be considered three residential housing units and so forth. "Residential Housing units" does not mean apartments.

All other terms and conditions remain unchanged.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

## CONTINUOUS OR PROGRESSIVE INJURY AND DAMAGE EXCLUSION

*This insurance does not apply to:*

**Continuous or Progressive Injury and Damage**

"Bodily injury" or "Property damage"

(1) which first existed, or is alleged to have first existed, prior to the inception date of this Policy; or

(2) which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged "bodily injury" or "property damage" continues during this policy period; or

(3) which were caused, or are alleged to have been caused, by a condition that first existed prior to the inception date of this policy

However, this exclusion does not apply to "bodily injury "or "property damage", that actually or allegedly occurred in the State of Colorado and was unknown by you prior to the policy period.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by **Maxum Indemnity Company.**

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

## CONTRACTORS MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE

---

**SECTION V– DEFINITIONS, 13. "Occurrence"** is deleted and replaced by the following:

"Occurrence" means

a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

b. acts, errors, or omissions in the rendering or failure to render "professional services".

The following definition is added to **SECTION V– DEFINITIONS:**

"Professional services" means services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor; provided however, "professional services" does not include:

a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; or

b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLEXIBLE BLANKET ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT, WRITTEN AGREEMENT OR WRITTEN PERMIT

This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE POLICY**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE POLICY**

Except as otherwise stated in this endorsement, the terms and conditions of the Policy apply.

A. The following is added to **SECTION II - WHO IS AN INSURED**

**Flexible Blanket Additional Insured As Required By Written Contract, Written Agreement Or Written Permit**

Any person(s) or organization(s) are additional insureds when you have agreed, in a written contract or written agreement, or when required by a written permit issued by a state or governmental agency or subdivision or political subdivision that such person(s) or organization(s) be added as an additional insured on your Commercial General Liability Coverage Policy

The insurance afforded to any additional insured under this endorsement applies only if the "bodily injury" or "property damage" occurs, or the "personal and advertising injury" offense is committed:

a. During the policy period; and

b. Subsequent to the commencement of performance under the written contract, written agreement, or issuance of the written permit; and

c. Before the expiration of the time period that the written contract, written agreement or written permit requires such insurance be provided to the additional insured, and if no such time period is specified in the contract, agreement, or permit, then before the expiration of two years from the date "your work" under such written contract, written agreement or written permit is complete; and

d. Only to the extent permitted by law.

e. Will not be broader than that which the written contract, written agreement or written permit requires.

However, the insurance provided to the additional insured by this endorsement does not apply to "bodily injury", "property damage" or "personal and advertising injury" included in the "products-completed operations hazard", unless the written contract, written agreement or written permit specifically requires such coverage be provided for the additional insured.

Such person(s) or organization(s) is an additional insured under the Products/Completed Operations Liability Coverage Policy, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" as described in Paragraph **(1)**, **(2)**, or **(3)** below, whichever applies:

(1) If the written contract, written agreement or written permit specifically requires you to provide additional insured coverage to that person or organization by the use of:

(a) The Additional Insured - Owners, Lessees Or Contractors endorsement CG 20 10 11 85, Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization endorsement CG 20 10 10 01, Additional Insured - Owners, Lessees Or Contractors - Completed Operations endorsement CG 20 37 10 01; or both of such endorsements with any of the aforementioned editions dates;

then such person or organization is an additional insured, but only with respect to liability arising out of "your work" to which the written contract, written agreement or written permit applies; or

(2) If the written contract, written agreement or written permit specifically requires you to provide additional insured coverage to that person or organization by the use of:

**(a)** The Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization endorsement CG 20 10 07 04, CG 20 10 04 13, or CG 20 10 12 19, the Additional Insured - Owners,

© 2021, The Hartford
(May include copyrighted material of Insurance Services Office, Inc., with its permission)

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

*Lessees Or Contractors - Completed Operations* endorsement CG 20 37 07 04, CG 20 37 04 13 or CG 20 37 12 19, or both of such endorsements with any of the aforementioned edition dates; or

**(b)** Either or both of the following:

(i) The Additional Insured - Owners, Lessees Or Contractors - Scheduled Person Or Organization endorsement CG 20 10; or

(ii) The Additional Insured -Owners, Lessees Or Contractors - Completed Operations endorsement CG 20 37,

without an edition date of such endorsement specified in the written contract, written agreement, or written permit; then such person or organization is an additional insured, but only with respect to liability caused, in whole or in part, by "your work" to which the written contract, written agreement or written permit applies; or

**(3)** If neither Paragraph **(1)** nor **(2)** above applies, then the person or organization is an additional insured only if, and to the extent that, the injury or damage is caused in whole or in part by "your work" to which the written contract, written agreement or written permit applies.

**B.** With respect to the insurance afforded to any additional insured under this endorsement, the following additional exclusions apply:

**(1)** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, by any insured including:

(a) The preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

(b) Supervisory, surveying, inspection, architectural or engineering activities.

This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured, if the "bodily injury", "property damage", or "personal and advertising injury" arises out of the rendering of or the failure to render any professional service described in Paragraphs **(1)(a)** or **(1)(b)** above.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

The most we will pay on behalf of the additional insured is the lessor of:

a. The minimum amount of insurance required by the written contract or written agreement you have entered into with the additional insured; or

b. The applicable Limits of Insurance shown in the Declarations.

This endorsement shall not increase the applicable Limits of Insurance shown in the

Declarations. All other terms and conditions in the policy remain unchanged.

© 2021, The Hartford
(May include copyrighted material of Insurance Services Office, Inc., with its permission)

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to Coronados Pool Plaster Inc by Maxum Indemnity Company.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided for under the following:

Commercial General Liability

This endorsement, effective *____ at 12:01 a.m. standard time, forms a part of Policy Number*____ issued to *____ by Maxum Indemnity Company. This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

# EXCLUSION – PERFLUOROALKYL AND POLYFLUOROALKYL SUBSTANCES (PFAS)

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

***Perfluoroalkyl and Polyfluoroalkyl Substances (PFAS)***

This insurance does not apply to:

1. Any damages, judgments, settlements, loss, costs or expenses, or any other form of relief, remedy or recovery that may be awarded or incurred by reason of any claim or "suit" alleging actual or threatened injury or damage of any nature or kind, including, but not limited to, "bodily injury", "property damage" or "personal and advertising injury", which arises out of, or relates in any way to "PFAS ", including but not limited to:

   a. manufacturing, handling, sale, distribution, marketing, installation, repair, removal, abatement, replacement, or handling of "PFAS" or products containing "PFAS"; or

   b. an actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "PFAS" whether intentional or unintentional; or

   c. consumption, absorption, ingestion, presence, inhalation or use of, contact with or exposure to, "PFAS", whether by direct or passive exposure.

2. Any loss, cost or expense arising out of any

   a. Request, demand, order, or other requirement (whether statutory or regulatory) that any insured or others test for, investigate for, monitor, clean up, abate, remove, remediate, contain, treat, detoxify or neutralize, dispose of, or in any way respond to, or assess the effects of "PFAS"; or

   b. Claim or suit by or on behalf of a governmental authority for damages because of testing for, investigating for, monitoring, cleaning up, abating, removing, remediating, containing, treating, detoxifying or neutralizing, disposing of or in any way responding to or assessing the effects of "PFAS".

B. The following definition is added to Section V - Definitions:

"PFAS" means:

*All other terms and conditions remain unchanged.*

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

1. Any substance, material, or compound that is or contains per-and polyfluoroalkyl substances, including but not limited to perfluorobutanoic acid (PFBA), perfluorohexanoic acid (PFHxA), perfluoroheptanoic acid (PFHpA), perfluorooctanoic acid (PFOA), perfluorononanoic acid (PFNA), perfluorodecanoic acid (PFDA), perfluoroundecanoic acid (PFUnA), perfluorododecanoic acid (PFDoDA), perfluorobutane sulfonic acid (PFBS), perfluorohexane sulfonic acid (PFHxS), perfluorooctane sulfonic acid (PFOS), and perfluorooctane sulfonamide (FOSA).

2. Any substance, material, or compound that is identified or acknowledged by any federal, state, international or other governmental agency or authority, including but not limited to the United States Environmental Protection Agency (EPA), the Centers for Disease Control and Prevention (CDC), the Agency for Toxic Substances and Disease Registry (ATSDR), the National Institutes for Health (NIH), and the International Agency for Research on Cancer (IARC):

a. As or to contain a per-and polyfluoroalkyl substance; or

b. To exhibit or demonstrate the same or similar harmful properties as a per-and polyfluoroalkyl substance.

3. Any constituents, additives, degradation, break down, or by-products to or of any substance, material or compound set forth in subparagraphs a. and b. above, including but not limited to homologues, isomers, salts, esters, alcohols, acids, and precursor chemicals, compounds and derivatives.

May include copyrighted material of the Insurance Services Office, Inc. with its permission.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

All other terms and conditions remain unchanged.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

## LIABILITY DEDUCTIBLE ENDORSEMENT

---

In consideration of the premium charged, it is agreed:

1. From the total amount of the Company's obligation to pay either "damages" on behalf of the Insured, or any expenses incurred under the SUPPLEMENTARY PAYMENTS, or Coverages A and B provision, there shall be subtracted the deductible amounts stated in the schedule below as applicable to such coverages.

2. The deductible amount stated in the schedule applies as follows:

(a) **PER-CLAIM BASIS** - If the deductible is on a per claim basis, the deductible amount applies under Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all payments made ("damages" or expenses) because of "bodily injury" sustained by one person, or to all "property damage" sustained by one person or organization, as the result of any one "occurrence."

(b) **PER-OCCURRENCE BASIS** - If the deductible is on a per "occurrence" basis, the deductible amount applies under the Bodily Injury Liability or Property Damage Liability Coverage, respectively, to all payments made ("damages" or expenses) because of all "bodily injury" or "property damage" as the result of any one "occurrence."

3. The terms of the policy, including with respect to (a) the Company's rights and duties with respect to the defense of "suits" and (b) the Insured's duties in the event of an "occurrence," apply irrespective of the application of the deductible amount.

4. The Company may pay any part of or the entire deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, the Named Insured shall promptly reimburse the Company for such part of the deductible amount as has been paid by the Company.

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently then non-confidential information and documents.

5. In the event that the insured shall not promptly reimburse the company for the deductible amount demanded, then any cost incurred by the Company in collection of the deductible amount shall be added to and applied in addition to the applicable deductible amount without limitation to such costs. These costs shall include but not be limited to collection agency fees, attorney's fees and interest.

**SCHEDULE**

| | | |
|---|---|---|
| Bodily Injury Liability | | Per "occurrence" |
| Property Damage Liability | | Per "occurrence" |
| Bodily Injury Liability and Property Damage Liability Combined | | Per "occurrence" |

| | | |
|---|---|---|
| Bodily Injury Liability | | Per "claim" |
| Property Damage Liability | | Per "claim" |
| Bodily Injury Liability and Property Damage Liability Combined | $500 | Per "claim" |

"Damages" means compensation, only in the form of money, for a person or entity who claims to have suffered a "bodily injury" or "personal and advertising injury," or who claims to have sustained "property damage."

*If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

*This endorsement modifies insurance provided for under the following:*

**Commercial General Liability**

---

**EXCLUSION - PUNITIVE OR EXEMPLARY DAMAGES**

---

The following exclusion is added to the policy:

This insurance does not apply to punitive or exemplary "damages" or treble or other multiple "damages" as may be allowed by statute or law.

If a "suit" is brought against the insured or persons insured hereunder which falls within the coverage provided by this policy, but seeks both compensatory "damages" ("damages" for economic loss and pain and suffering) and punitive, exemplary or multiple "damages" ("damages" as a means of punishment), no coverage shall be provided by this policy for any costs, interests, costs of defense or "damages" attributable to punitive, exemplary or multiple "damages" and we have no duty to defend or indemnify you for any such "damages."

"Damages" means compensation, only in the form of money, for a person or entity who claims to have suffered a "bodily injury," "personal and advertising injury," or who claims to have sustained "property damage."

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective 4/12/2025 at 12:01 A.M. Standard time, forms a part of Policy Number BDG-3108499-01 issued to Coronados Pool Plaster Inc by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

---

**AMENDMENT - AGGREGATE LIMITS OF INSURANCE (PER PROJECT)**

---

The General Aggregate Limit under **SECTION III - LIMITS OF INSURANCE** applies separately to each of your projects away from premises owned by or rented to you.

Notwithstanding the application of the General Aggregate Limit to each of your projects, under no circumstances will we pay more than $5,000,000 for all claims under this policy that are subject to the General Aggregate Limit.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

Includes copyrighted material of Insurance Services Office, Inc with its permission

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

# CONDITIONAL COVERAGE – SUBCONTRACTORS AND INDEPENDENT CONTRACTORS

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** of this policy is amended to include:

**Additional Conditions – Certificates of Insurance – Reduction of Damage and Expense Limits of Insurance**

a. You must obtain from all subcontractors or independent contractors, prior to commencement of any work performed for you or on your behalf by that subcontractor or independent contractor, Certificates of Insurance evidencing:

(1) Commercial General Liability coverage with limits of insurance that are equal to or greater than the limits afforded by this policy; and

(2) Specifying that you are named as an Additional Insured on that subcontractor's or independent contractor's General Liability policy, either by endorsement or by written contract, for such coverages and limits as required in condition (1) above

If at the time of an "occurrence" involving a subcontractor or independent contractor, any of the above conditions are not met with regard to such subcontractor or independent contractor, then **SECTION III - LIMITS OF INSURANCE** to the contrary notwithstanding, the most we will pay under all applicable limits and the aggregate total of all occurrence and aggregate limits of insurance of whatever kind or description otherwise provided by this policy is reduced to a combined limit of insurance of **$100,000** for all Damages, Defense Costs, Claims Expenses, and/or Supplementary Payments for all insureds for "bodily injury", "property damage", and "personal and advertising injury" arising out of, caused by, or resulting from any covered acts of such independent contractor or subcontractor working for you or on your behalf.

Includes copyrighted material of the Insurance Services Office, Inc. with its permission.

All other terms and conditions remain unchanged.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

This endorsement modifies insurance provided for under the following:

**Commercial General Liability**

**BLANKET WAIVER OF TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**) is amended by the addition of the following:

We waive any right of recovery we may have against any person or organization because of payments we make for injury or damage arising out of or resulting from your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard", but only if:

1. Such requirement forms a part of a written contract; and
2. The written contract was executed by all parties prior to any "occurrence", loss, or claim to which this insurance applies.

All other terms and conditions of this policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective* **4/12/2025** at 12:01 A.M. Standard time, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by Maxum Indemnity Company.

*This endorsement modifies insurance provided for under the following:*

**Commercial General Liability**

---

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – PRIMARY AND NON-CONTRIBUTORY

---

If any of the endorsements below are attached to this policy, coverage provided by the additional insured endorsement is amended to be afforded on a primary, non-contributory or primary and non-contributory basis when and as agreed to in writing in a contract or agreement between you and the additional insured.

Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization (CG 20 10)

Additional Insured – State Or Political Subdivisions – Permits (CG 20 12)

Additional Insured – Owners, Lessees Or Contractors – Automatic Status When Required In Construction Agreement With You (CG 20 33)

Blanket Additional Insured – Owners, Lessees or Contractors (E1223)

Flexible Blanket Additional Insured As Required By Written Contract, Written Agreement or Written Permit (E1430)

Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Agreement With You (CG2038)

Other: (Specify title and form number)

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## Claims Reporting

All claims should be reported immediately. It is imperative that Maxum receive notice of a claim as soon as possible.

Claims can either be reported directly to Maxum or to your agent for processing.

All legal notices should be sent by fax or overnight mail. Many states have limited time frames to file a responsive pleading, thus requiring overnight mail.

If you want to report directly to Maxum, please use one of the methods listed below and include the following information:

1. Name of the insured
2. Policy number and policy dates
3. Date of the loss
4. Detailed description of how and where loss occurred
5. Names, address, home and cell phone numbers of all persons involved
6. Business, home and cell phone numbers of insured
7. Police department name and case number, if reported to police
8. Detailed description of injury or damages

Claims can be reported in the following ways:

1. **E-mail**
   Email to: claims6@thehartford.com

2. **Fax**
   Address to: Claims Department and send fax to (678) 597-4501

3. **Phone**
   Toll Free: (800) 598-6324

4. **U.S. Mail**

   Address to:
   Claims Department
   Maxum Indemnity Company
   1 Hartford Plaza
   Hartford, CT 06155

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the
Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

MAXUM
A Company of The Hartford

**PRODUCER COMPENSATION NOTICE**

You can review and obtain information on Maxum's producer compensation practices at www.thehartford.com or at 1-800-592-5717.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# ENDORSEMENT #1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement, effective **10/4/2025** at **12:01 A.M. Standard time**, forms a part of Policy Number **BDG-3108499-01** issued to **Coronados Pool Plaster Inc** by **Maxum Indemnity Company**.

## CHANGE ENDORSEMENT

In consideration of a return premium of $3,506.00, and in accordance with the terms and conditions of the above policy, the policy is hereby amended.

| Premium | ($3,506.00) |
|---|---|
| Surplus Lines Tax | ($105.18) |
| Total | ($3,611.18) |

Policy Cancelled due to Insured Request

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "B"

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

JERRY PICKETT

vs.

CORONADOS POOL PLASTER INC

NO. 2025-19921

NOTICE TO DEFEND – CIVIL

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERENCE SERVICE
MONTGOMERY BAR ASSOCIATION
/est Airy Street (REAR)
ORRISTOWN, PA

10) 279-9660, EXTENSION 201

Client Complaint.

PRIF0034
R 10/11

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS, MONTGOMERY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| JERRY PICKETT and BRIAN PICKETT, Husband and Wife, | : | |
| v. | : | NO. 2025-19921 |
| CORONADOS POOL PLASTER, INC. | : | |
| and | : | **JURY TRIAL DEMANDED** |
| CORONADOS POOL PLASTER, INC., d/b/a CORONADOS POOL RENOVATIONS, | : | |

**COMPLAINT**

Plaintiffs Jerry Pickett and Brian Pickett ("Plaintiffs") now Complain against Defendants Coronados Pool Plaster, Inc. and Coronados Pool Plaster, Inc. d/b/a Coronados Pool Renovations ("Coronados"), and state:

1. Plaintiff Jerry Pickett is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 743 Elm Street, Hatfield, PA 19440.

2. Plaintiff Brian Pickett is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 743 Elm Street, Hatfield, PA 19440.

3. Plaintiffs are husband and wife.

4. At all times relevant to this Complaint, Plaintiff have and do jointly own the property located at 743 Elm Street, Hatfield, PA 19440 (the "Property").

5. Defendant Coronados Pool Plaster, Inc. is a business entity and authorized to conduct and transact business within the Commonwealth of Pennsylvania with a principal place of business and mailing address of 668 County Line Road, Telford, PA, 18969.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

6. Defendant Coronados Pool Plaster, Inc. d/b/a Coronados Pool Renovations is a business entity and authorized to conduct and transact business within the Commonwealth of Pennsylvania with a principal place of business and mailing address of 668 County Line Road, Telford, PA, 18969.

7. Upon information and belief, Coronados is a registered home improvement contractor licensed to do business in the Commonwealth of Pennsylvania.

8. As such, Coronados and all acts, omissions, and/or operations of Coronados, are subject to, and governed by, *inter alia*, the Pennsylvania Home Improvement Consumer Protection Act. 73 P.S. § 517.1, *et seq.*

9. Upon information and belief, Coronados' Pennsylvania contractor license number is PA004896.

10. It is believed, and therefore averred, that at all relevant times, agents, employees, contractors, subcontractors, and/or representatives of Coronados were working at the Property and/or at Plaintiffs' home on behalf of Coronados, and that said agents, employees, contractors, subcontractors, and/or representatives of Coronados were at all times acting within the scope of their employment and/or duties to Coronados.

**JURISDICTION AND VENUE**

11. This Court has personal jurisdiction over Defendant and of the subject matter of this case under 42 Pa. C.S. § 931.

12. Venue is proper in this judicial district under Pa. R.C.P. 2179(a)(2), as Montgomery County is a county in which Defendant regularly conducts business.

13. Venue is also proper in this judicial district under Pa. R.C.P. 2179(a)(3) and (a)(4), as the causes of action set forth in this Complaint arose in Montgomery County, and/or a number of

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

transactions and/or occurrences of which the causes of action set forth in this Complaint arose took place in Montgomery County.

**FACTS**

14. Plaintiffs have owned the Property jointly as tenants by the entireties since 2005.

15. In the rear yard of the Property, Plaintiffs have maintained an in-ground pool for their own use and the use and enjoyment of their family and friends.

16. On July 11, 2023, Plaintiffs contracted with Coronados for certain work to be performed on the pool located at the Property.

17. Specifically, Plaintiffs and Coronados executed a Pool Renovation Contract on that date (the "2023 Contract"). A true and correct copy of the 2023 Contract is attached as Exhibit "A."

18. Though Jerry Pickett alone signed the contract, Jerry Pickett signed the same on her own behalf and on behalf of her husband, Brian Pickett, who at all times was aware of and part of the negotiations and discussions leading to the formation of the 2023 Contract.

19. Under the terms of the 2023 Contract, Coronados agreed to perform certain work at the Property, including, but not limited to:

a. To remove old tiling from the pool and install a new mortar bed and marbled blue tile around the perimeter of the pool;

b. To install a new white plaster finish around the surface area of the pool and to install new drain covers and fittings; and/or

c. To take all actions necessary to ensure the proper application of the plaster finish and new tiling on the surface area, perimeter, and/or other areas of the pool and/or the Property as set forth in the 2023 Contract.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

20.     Plaintiffs agreed to pay the amount of $12,000 in total for the work to be performed by Coronados. *See* Exhibit "A."

21.     As required, Plaintiffs paid a deposit in the amount of $2,400, or 20% of the total contract price, to Coronados, which deposit Coronados retained and continues to retain.

22.     As set forth in the 2023 Contract, the work to be performed by Coronados was scheduled to begin, and be completed, in April 2024. *Id.*

23.     Separate from the 2023 Contract with Coronados, Plaintiffs had also planned to renovate and replace the concrete sidewalks and areas adjacent to the pool and leading from the pool area to other areas of the backyard, as well as to the side yards, driveway, and other areas of the Property.

24.     Coronados advised Plaintiffs at and/or shortly before the time of the execution of the 2023 Contract that Coronados did not perform the concrete work envisioned by Plaintiffs at the time, and recommended that Plaintiffs retain a certain separate contractor to perform said work.

25.     At the recommendation of Coronados, Plaintiffs engaged and paid a deposit to the separate contractor in order to perform this concrete work, which also was scheduled to begin in 2024.

26.     Plaintiffs were notified both by the separate contractor, and by Coronados, that the concrete work needed to be performed first before any plaster, tile, or other work contemplated under the 2023 Contract could take place.

27.     In April 2024, and for several weeks thereafter, the separate contractor retained by Plaintiffs became unable to perform the concrete work as contemplated under the separate agreement.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

28. As such, Coronados did not perform any work contemplated under the 2023 Contract by April 2024, as agreed.

29. Plaintiffs were able to recover the deposit that they had paid to the separate contractor by May of 2024.

30. By June of 2024, Coronados approached Plaintiffs and advised them that Coronados had the ability, skill, and personnel to perform the concrete work contemplated under their original contract with the separate contractor.

31. As such, Plaintiffs and Coronados entered into a second contract dated June 7, 2024 (the "2024 Contract") in order for Coronados to perform this work. A true and correct copy of the 2024 Contract is attached as Exhibit "B."

32. The 2024 Contract was separate from, and did not void, the 2023 Contract and did not result in a cancellation, postponement, or elimination of any work promised by Coronados under the 2023 Contract.

33. Under the terms of the 2024 Contract, Coronados agreed to perform certain work at the Property, including, but not limited to:

a. Removal and hauling away of all concrete materials already in the backyard, side yard, and other areas of the Property including the entrance of the home located on the Property;

b. Installation and securing a new cantilevered, concrete deck around the pool perimeter, which included framing, ground compacting, installation of gravel and reinforcement of the decking system as necessary, pouring of the concrete deck, installation of new deck joints, and broom finishing of the concrete in the areas;

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

c. Installation of a new sidewalk at the Property, which included framing, ground compacting, installation of gravel and reinforcement of the decking system as necessary, pouring of the concrete deck, installation of new deck joints, and broom finishing of the concrete in side walk area;

d. Extension of the downspout under the new sidewalk to prevent water from running over the concrete.

34. The 2024 Contract included a six-month warranty on all workmanship for concrete work. *Id.*

35. The total contract price under the 2024 Contract was $16,780. Plaintiffs paid Coronados the required down payment of $3,356.00 to secure Coronados' availability and the necessary materials for the project, which down payment Coronados retained and continues to retain.

36. The estimated start and completion date of the work specified under the 2024 Contract was April-May 2025. *Id.*

37. While entering into the 2024 Contract and agreeing to perform and be bound by the same, at all times relevant, Coronado advised and held itself out to Plaintiffs that it remained willing, able, and dedicated to performing its duties under the 2023 Contract.

38. In order for the work under the 2023 Contract and/or 2024 Contract to be performed, Coronados advised Plaintiffs that Coronados would need to drain the pool of any existing water, and clean any debris then existing in the pool.

39. On April 1, 2025, Coronados employees, agents, representatives, and/or assigns presented to the Property to begin work. On that date, Coronados representatives drained the pool

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

of existing water and demolished much, but not all, of the existing concrete surrounding the pool, the side yard, and the front of the house on the Property.

40. Rather than finish or continue planned work, Coronados employees, agents, representatives, and/or assigns told Plaintiffs that new light boxes for the pool needed to be installed before further work under the 2023 Contract and 2024 Contract could be performed.

41. Coronados employees, agents, representatives, and/or assigns further advised Plaintiffs that Coronados would order the new light boxes promptly.

42. In compliance with their obligations under the 2023 Contract and/or 2024 Contract and at the insistence of Coronados, Plaintiffs paid the amount of $7,200 to Coronados on April 9, 2025.

43. Coronados retained the payment provided to it by Plaintiffs on April 9, 2025.

44. Despite Coronados' representations, the only additional work performed by Coronados at the Property between April 1, 2025 and May 9, 2025 was the installation of a new skimmer pot, tiling work around the perimeter of the pool, and the partial installation of new light boxes for the pool (described more fully below).

45. By May 9, 2025, the plastering and other work contemplated under the 2023 Contract remained unfinished, and none of the concrete framing, pouring, or installation contemplated under the 2024 Contract had been performed.

46. Plaintiffs contacted Coronados no less than nine separate times in this 45-day timeframe to ask for updates as to when they could expect the work to be performed, with little to no response by Coronados.

47. After these repeated contacts, a Coronados employee, representative, and/or agent telephoned Plaintiffs to advise that the concrete work could be commenced on May 9, 2025, but that

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

certain electric junction boxes at or near the pool would have to be moved and light boxes in the pool installed before any concrete or other work could be performed at the Property.

48. On May 9, 2025, Coronados representatives arrived at the Property. The representatives moved the junction boxes for the lights to install the light boxes, but instead of installing the light boxes as advised, the representatives left the boxes hanging from the junctions and did not install them properly.

49. Coronados did not perform any further work, including but not limited to concrete work, at the Property on May 9, 2025, as Coronados representatives advised Plaintiffs that the concrete work could not be completed due to rainy weather conditions.

50. Plaintiffs thereafter contacted Coronados on several occasions for an update as to when further work could be performed and/or finished as promised under the 2023 Contract and 2024 Contract.

51. Plaintiffs did not receive a response from Coronados as to a definite date for Coronados to return and perform the promised work.

52. Early in the afternoon of May 16, 2025, Plaintiff Jerry Pickett arrived home from work and looked in her backyard. She immediately saw that the entire in-ground pool had become dislodged, raised, and elevated well above-ground level.

53. Jerry Pickett thereafter telephoned Plaintiff Brian Pickett to advise of what had occurred, and Brian Pickett returned to the Property shortly thereafter to view the same.

54. At no point had something like this been contemplated by Plaintiffs, and at no time did Coronados or any of its employees, agents, representatives, and/or assigns advised Plaintiffs that this was a possibility in the midst of any work contemplated under the 2023 Contract and/or the 2024 Contract.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

55. Nonetheless, Coronados employees, agents, representatives, and/or assigns told Plaintiffs that the situation was not significant and would be resolved easily in the coming days.

56. Despite this alleged reassurance, Coronados did not immediately return to the Property to further assess or remedy the dislodging and elevation of the pool, and did not return several phone calls or communications by Plaintiffs for an update.

57. Finally, after repeated and consistent requests for help from Plaintiffs, Coronados agreed to send a pool installation representative from a third party—who is not employed by Coronados—to assess the situation and provide a solution.

58. This representative arrived at the Property and met with Plaintiffs on May 20, 2025.

59. Almost immediately upon surveying the scene, the representative told Plaintiffs that the hydrostatic plugs in the deep end of the pool remained intact and were still blocking water from exiting the pool structure.

60. The representative told Plaintiffs that the hydrostatic plugs should have been pulled before any water was drained from the pool, as otherwise water and/or other fluids, objects, items, or otherwise can collect underneath the pool and cause it to be raised out of the ground, such as what happened to Plaintiffs' pool in this instance.

61. The representative told Plaintiffs that the resulting elevation of the pool—in direct contradiction to what they were told by Coronados—was a catastrophic event and would necessarily result in Plaintiffs needing to remove and replace the entire pool, as well as a complete removal and re-installation of any plaster, tiling, concrete, and/or other attendant structures surrounding the pool.

62. Plaintiffs relied upon, and reasonably believed that they could rely upon, Coronados and/or its employees, agents, representatives, and/or assigns to take all actions necessary to properly

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

drain the pool and to prepare the area for the work contemplated under the 2023 Contract and 2024 Contract.

63. As set forth herein and otherwise, Coronados and/or its employees, agents, representatives, and/or assigns failed to take all actions necessary to properly drain the pool and to prepare the area for the work contemplated under the 2023 Contract and 2024 Contract

64. Faced now with a substantially larger project, Plaintiffs again attempted to contact Coronados for a solution and to work diligently to fix the situation.

65. Coronados and/or its employees, agents, representatives, and/or assigns repeatedly reassured Plaintiffs that they were working on the situation and dedicated to doing whatever it took to ensure the pool area was properly fixed and all work completed.

66. However, despite numerous contacts from Plaintiffs, and despite numerous chances provided, Coronados failed, and continues to fail, to remedy the situation caused by its own negligence, carelessness, and/or recklessness.

67. As a direct, substantial, and proximate result of the negligence, carelessness, recklessness, acts, omissions, and/or failures to act by Coronados and/or its employees, agents, representatives, and/or assigns, Plaintiffs are now left with a backyard in complete and utter disarray, which is completely unusable not only for swimming and enjoyment but for any reason whatsoever.

68. The pool remains completely unremedied and entirely dislodged, with no fix or end in sight, despite Plaintiffs' repeated entreaties to Coronados to fix the situation.

69. Left with no other choice, Plaintiffs contacted a separate pool installation company to provide a quote to remedy the situation, remove the old structure as required, and install an entirely new pool to replace the old one that they had enjoyed as Property owners for years.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

70. The new contractor confirmed the opinion of the third part representative that Coronados had caused a catastrophic issue in the rear yard of the Property and that the entire pool would need to be replaced.

71. The contractor also told Plaintiffs that the cost to perform all work—including but not limited to removal of the old structure and installation of a new pool of the size and make similar to what previously was located in Plaintiffs' back yard—would be substantially more than the limits for compulsory arbitration in this Court.

72. In addition to the above, Plaintiffs' Property continues to be plagued with incomplete work as promised by Coronados, with unfinished concrete and framing throughout the property, overgrown landscaping and weeding, and/or multiple other unsightly issues,

73. All of the above issues, as well as all other damages, issues, property damage, and/or other damages compensable by law, set forth in this Complaint and otherwise incurring to Plaintiffs were, are, and/or continue to be, directly, substantially, and proximately caused by Coronados' negligence, carelessness, recklessness, acts, omissions, and/or failures to act.

**COUNT I – NEGLIGENCE**
**Plaintiffs v. Defendants**

74. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully set forth herein at length.

75. At all times relevant, Defendants owed to duty to Plaintiffs to ensure that all proper precautions and measures were taken before performing work at the Property.

76. Defendants breached the duty of care owed to Plaintiffs by, *inter alia*, negligently, carelessly, and/or recklessly:

a. Failing to pull and/or remove the hydrostatic plugs in the pool before draining the pool;

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

b. Failing to plan for proper drainage of the pool structure;

c. Failing to reasonably assess, manage, or conduct all acts or actions necessary to provide for proper pool drainage and/or to ensure the safety, viability, and/or accessibility of the pool on Plaintiffs' Property;

d. Failing to ensure that the hydrostatic plugs would be removed before any work could be performed by Defendants on the Property;

e. Failing to have, assign, or contemplate proper or reasonable personnel to ensure that the hydrostatic plugs in the pool were removed before any drainage of the pool and/or work could be performed;

f. Failing to train and/or advise Defendants' employees, agents, representatives and/or assigns on the proper or reasonable manner for pool draining, including but not limited to the necessity of removing and/or pulling the hydrostatic plugs before draining the pool and/or performing any other work necessary at the Property;

g. Failing to hire, maintain, assign, or divert properly trained individuals, employees, agents, representatives and/or assigns to ensure that the hydrostatic plugs could be properly removed and/or pulled;

h. Failing to hire, maintain, assign, or divert properly trained individuals, employees, agents, representatives and/or assigns such that the work contemplated by Defendants could be properly or reasonably performed;

i. Failing to take all actions and/or tasks to ensure that Plaintiffs' pool could be drained properly;

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

j. Failing to take all actions and/or tasks necessary to ensure that any and all work contemplated by Defendants could be performed properly at Plaintiffs' Property;

k. Failing to reasonably inspect, maintain, and/or otherwise exercise due and reasonable care under the circumstances in view of the foreseeable dangers, accidents, and/or damage that could occur to Plaintiffs' Property;

l. Failing to implement and enforce policies and procedures to ensure that the hydrostatic plugs in Plaintiffs' pool could be properly removed and/or pulled; and/or

m. Failing to implement and enforce policies and procedures to ensure that any and all work contemplated by Defendants could be performed properly at Plaintiffs' Property.

77. As a direct and proximate result of Defendants' acts and/or omissions as described above and herein, Plaintiffs have suffered damages in an amount in excess of the compulsory arbitration limits of this Court.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants in an amount in excess of $50,000 and/or in excess of the compulsory arbitration limits in this Court, whichever is greater, compensatory damages, punitive damages, delay damages, interest, costs of suit, and/or such other relief as this Court deems proper.

**COUNT II – VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**
**Plaintiffs v. Defendants**

78. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully set forth herein at length.

79. At all times relevant, Defendants are and/or were contractors subject to and

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

80.    At all times relevant, Plaintiffs are and/or were consumers as contemplated under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et. seq.* (the "CPL").

81.    Plaintiffs purchased goods and/or services from Defendants for personal, family, or household purposes, and suffered an ascertainable loss therefrom in violation of 73 P.S. Section 201-9.2.

82.    At all times relevant and otherwise, Defendants represented to Plaintiffs that they could perform the work contemplated on behalf of Plaintiffs properly, reasonably, and as represented, and that Defendants held the capabilities to do so.

83.    Defendants and/or Defendants' employees, agents, subcontracts, or assigns used and employed unfair and deceptive acts and practices in violation of the CPL and/or Defendants' /or Defendants' employees, agents, subcontracts, or assigns acts, omissions, and/or failures to act violated the CPL, including, but not limited to:

    a.  Making a repair, improvement, and/or replacement to the pool and/or surface or equipment on or pertinent to the pool, concrete area of the rear yard, and/or other areas of Plaintiffs' property that was of a nature or quality inferior to or below the standard of that agreed to in writing in violation of 73 P.S. § 201-2(4)(xvi);

    b.  Representing to Plaintiffs that Defendants did, or could, perform the services as set forth in the 2023 Contract and 2024 Contract in a particular standard, quality, or grade, when in fact Defendants were incapable of performing such services of the particular standard, quality, or grade represented in violation of 73 P.S. § 201-2(4)(vii);

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

    c.   Representing to Plaintiffs that the concrete placed in the rear yard was of a particular standard, quality, or grade, of which it was not, in violation of 73 P.S. § 201-2(4)(vii);

84.    Defendants and/or their employees, agents, subcontracts, or assigns intended that Plaintiffs would rely upon their representations, acts, and/or statements.

85.    Plaintiffs reasonably and justifiably relied on the said representations, acts, and/or statements by Defendants and/or Defendants' employees, agents, subcontracts, or assigns, and did so to their detriment.

86.    Plaintiffs have incurred, and will continue to incur, monetary damages as a direct and proximate result of Defendant's violations of the Unfair Trade Practice and Consumer Protection Law, as more fully set forth above in accordance with 73 P.S. § 201-9.2.

87.    Under 73 P.S. § 201-9.2 of the CPL, Plaintiffs are entitled to and should be awarded the imposition of treble damages for the conduct aforementioned in this count and elsewhere in the Complaint.

88.    Under 73 P.S. § 201-9.2 of the CPL, Plaintiffs are entitled to and should be awarded their reasonable attorneys' fees for the conduct aforementioned in this count and elsewhere in the Complaint.

89.    Defendants' actions were intentional, willful, wanton, knowing, and/or reckless, entitling Plaintiffs to an award of punitive damages under Pennsylvania law.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants in an amount in excess of $50,000 and/or in excess of the compulsory arbitration limits in this Court, whichever is greater, including but not limited to treble damages, attorneys'

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

fees and costs, compensatory damages, delay damages, interest, costs of suit, and/or such other relief as this Court deems proper.

**COUNT III – VIOLATION OF THE PENNSYLVANIA HOME IMPROVEMENT CONSUMER PROTECTION ACT**
**Plaintiffs v. Defendants**

90. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully set forth herein at length.

91. At all times relevant to this Complaint, Defendants are contractors as contemplated by and subject to the Pennsylvania Home Improvement Consumer Protection Act ("HICPA"), 73 P.S. § 517.1, *et seq.*

92. Defendants violated HICPA by:

a. Abandoning, and/or failing to perform, without justification, the work promised under the 2023 Contract and/or 2024 Contract, pursuant to 73 P.S. § 517.9(5); and/or

b. Offering to perform the 2023 Contract and/or 2024 Contract when in fact Defendants did not intend to perform as required under the 2023 Contract and/or 2024 Contract, pursuant to 73 P.S. § 517.9(8)(ii).

93. As a direct and proximate result of Defendants' violations of HICPA as set forth herein, Plaintiffs have sustained, and continue to sustain, monetary damages.

94. Under 73 P.S. § 517-10, a violation by a contractor subject to HICPA is deemed a violation of the CPL, and as such Defendants' violations of HICPA as described herein similarly violate the CPL.

95. Under 73 P.S. § 201-9.2 of the CPL, Plaintiffs are entitled to and should be awarded the imposition of treble damages for the conduct aforementioned in this count and elsewhere in the Complaint.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

96. Under 73 P.S. § 201-9.2 of the CPL, Plaintiffs are entitled to and should be awarded their reasonable attorneys' fees for the conduct aforementioned in this count and elsewhere in the Complaint.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants in an amount in excess of $50,000 and/or in excess of the compulsory arbitration limits in this Court, whichever is greater, including but not limited to treble damages, attorneys' fees and costs, compensatory damages, delay damages, interest, costs of suit, and/or such other relief as this Court deems proper.

**COUNT IV – BREACH OF CONTRACT (2023 CONTRACT)**
**Plaintiffs v. Defendants**

97. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully set forth herein at length.

98. A valid, enforceable, and knowing contract between Plaintiffs and Defendants existed within the 2023 Contract, where Defendants promised to perform certain work at Plaintiffs' Property in exchange for compensation to be paid by Plaintiffs.

99. Defendants breached the 2023 Contract by failing to perform one or more obligations arising to Defendants under the same, including, but not limited to:

a. Failing to remove, and/or failing to properly remove, old tiling from the pool;

b. Failing to install, and/or failing to properly install, a new mortar bed and marbled blue tile around the perimeter of the pool;

c. Failing to install, and/or failing to properly install, a new white plaster finish around the surface area of the pool;

d. Failing to install, and/or failing to properly install new drain covers and fittings;

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

e. Failing to take, and/or failing to properly take, all actions necessary to ensure the completion of Defendants' obligations under the 2023 Contract; and/or

f. Failing to take such actions to drain the pool properly and/or to perform such other actions so as to prevent any actions required to be taken by Defendants under the 2023 Contract, where such failures were the direct and proximately caused solely by Defendants.

100. The aforementioned breaches, and/or such other acts or omissions taken to breach the 2023 Contract described elsewhere in this Complaint, were entirely and completely the fault and responsibility of Defendants and not that of Plaintiffs and/or any other third party.

101. Plaintiffs performed their obligations as required under the 2023 Contract.

102. As a direct and proximate result of the aforementioned breaches of contract, Plaintiffs have suffered, and will continue to suffer, damages compensable under Pennsylvania law.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants in an amount in excess of $50,000 and/or in excess of the compulsory arbitration limits in this Court, whichever is greater, compensatory damages, prejudgment interest, costs of suit, and/or such other relief as this Court deems proper.

**COUNT IV – BREACH OF CONTRACT (2024 CONTRACT)**
**Plaintiffs v. Defendants**

103. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully set forth herein at length.

104. A valid, enforceable, and knowing contract between Plaintiffs and Defendants existed within the 2023 Contract, where Defendants promised to perform certain work at Plaintiffs' Property in exchange for compensation to be paid by Plaintiffs.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

105.    Defendants breached the 2024 Contract by failing to perform one or more obligations arising to Defendants under the same, including, but not limited to:

    a.  Failing to remove and/or haul, and/or failing to remove and/or haul properly, any or all concrete materials already in the backyard, side yard, and other areas of the Property including the entrance of the home located on the Property;

    b.  Failing to install and/or secure, and/or failing to install and/or secure properly, a new cantilevered, concrete deck around the pool perimeter;

    c.  Failing to frame, compact, and/or install, and/or failing to frame, compact, and/or install properly, gravel and reinforcement of the decking system for the concrete as necessary;

    d.  Failing to pour, and/or failing to pour properly, the concrete deck;

    e.  Failing to install, and/or failing to install properly, new deck joints;

    f.  Failing to finish, and/or failing to finish properly, the concrete areas and/or remainder of the Property;

    g.  Failing to frame, compact, and/or install, and/or failing to properly frame, compact, and/or install, gravel and reinforcement of the sidewalk as necessary;

    h.  Failing to install and/or extend, and/or failing to install and/or extend properly, the new sidewalk to prevent water from running over the concrete; and/or

    i.  Failing to take such actions to drain the pool properly and/or to perform such other actions properly so as to prevent any actions required to be taken by Defendants under the 2024 Contract, where such failures were the direct and proximately caused solely by Defendants.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

106. The aforementioned breaches, and/or such other acts or omissions taken to breach the 2024 Contract described elsewhere in this Complaint, were entirely and completely the fault and responsibility of Defendants and not that of Plaintiffs and/or any other third party.

107. Plaintiffs performed their obligations as required under the 2024 Contract.

108. As a direct and proximate result of the aforementioned breaches of contract, Plaintiffs have suffered, and will continue to suffer, damages compensable under Pennsylvania law.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants in an amount in excess of $50,000 and/or in excess of the compulsory arbitration limits in this Court, whichever is greater, compensatory damages, prejudgment interest, costs of suit, and/or such other relief as this Court deems proper.

**COUNT V – UNJUST ENRICHMENT**
**Plaintiffs v. Defendants**

109. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully set forth herein at length.

110. Plaintiffs conferred a benefit on Defendants by, inter alia:

a. Paying the amount of $2,400 to Defendants as the required down payment under the 2023 Contract;

b. Paying the amount of $3,356.00 to Defendants as the required down payment under the 2023 Contract; and/or

c. Paying the amount of $7,200.00 to Defendants as required by Defendants on April 9, 2025.

111. Defendants retained and/or enjoyed, and continue to retain and/or enjoy, the benefits and payments conferred on them by Plaintiffs.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

112. It would be unjust, and/or circumstances are such that demand it would be unjust, for Defendants to retain the benefit conferred on them by Plaintiffs.

113. Circumstances and facts dictate that Plaintiffs be awarded and/or refunded the monies paid to Defendants.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants in an amount in excess of $50,000 and/or in excess of the compulsory arbitration limits in this Court, whichever is greater, compensatory damages, prejudgment interest, costs of suit, and/or such other relief as this Court deems proper.

**COUNT VI – BREACH OF WARRANTY**
***Plaintiffs v. Defendants***

114. Plaintiffs incorporate the preceding paragraphs of this Complaint as though fully set forth herein at length.

115. Defendants expressly warranted that the work contemplated in the 2023 Contract and 2024 Contract could be completed in a workmanlike manner, and as such were obligated to perform the work specified in the contract and complete the project in a good and workmanlike manner.

116. Defendants failed to complete performance under the 2023 Contract and 2024 Contract.

117. As a direct and proximate result of Defendant and/or its agents and/or its subcontractors' breach of contract and breach of warranty, Plaintiffs have suffered substantial injuries and damage.

118. Due to its breach of contract and warranty, Defendant is liable for direct and consequential damages, reliance damages, and unjust enrichment damages.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against Defendants in an amount in excess of $50,000 and/or in excess of the compulsory arbitration limits in this Court, whichever is greater, compensatory damages, interest, costs of suit, and/or such other relief as this Court deems proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by TWELVE (12) jurors for all claims set forth in this Complaint so triable and/or for which a jury trial is available.

**WALSH PANCIO, LLC**

BY:__________________________

Michael J. Lyon, Esquire
I.D. No. 306519
*Attorney for Plaintiffs*
2326 North Broad Street, Suite 200
Colmar, PA 18915
(215) 368-8660; fax: (215) 368-7990
mike@walshpancio.com

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## VERIFICATION

I, JERRY PICKETT, a Plaintiff in this matter, hereby verify that the facts set forth in the foregoing **Complaint** are true and correct to the best of my information, knowledge and belief, and that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

Jerry Pickett

JERRY PICKETT

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**VERIFICATION**

I, BRIAN PICKETT, a Plaintiff in this matter, hereby verify that the facts set forth in the foregoing **Complaint** are true and correct to the best of my information, knowledge and belief, and that false statements herein are made subject to the penalties of 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

BRIAN PICKETT

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**IN THE COURT OF COMMON PLEAS, MONTGOMERY COUNTY, PENNSYLVANIA**

| | | |
|---|---|---|
| JERRY PICKETT and BRIAN PICKETT,<br>Husband and Wife,<br>743 Elm Street<br>Hatfield, PA 19440 | : | |
| v. | : | NO. 2025-19921 |
| CORONADOS POOL PLASTER, INC.<br>668 County Line Road<br>Telford, PA 18969 | : | |
| and | : | |
| CORONADOS POOL PLASTER, INC.,<br>d/b/a CORONADOS POOL<br>RENOVATIONS,<br>668 County Line Road<br>Telford, PA 18969 | : | |

**CERTIFICATION OF SERVICE**

I, Michael J. Lyon, Esquire, counsel for Plaintiffs, do hereby certify that a true and correct copy of ***Complaint*** was served upon the following counsel electronically by the Montgomery County E-Filing System and by Regular Mail, Postage Prepaid on the date of the E-filing acceptance of the document: September 8, 2025.

CORONADOS POOL PLASTER, INC.
668 County Line Road
Telford, PA 18969
and
CORONADOS POOL PLASTER, INC.,
d/b/a CORONADOS POOL
RENOVATIONS,
668 County Line Road
Telford, PA 18969

**WALSH PANCIO, LLC**

BY: ______________________
Michael J. Lyon, Esquire

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

I.D. No. 306519
***Attorney for Plaintiffs***
2326 North Broad Street, Suite 200
Colmar, PA 18915
(215) 368-8660; fax: (215) 368-7990
mike@walshpancio.com

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "A"

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Byron - 215-872-2047 @ afternoon.

# CORONADOS POOL PLASTER INC

**668 County Line Rd, Telford PA 18969**

Phone 215-723-5885 Fax 215-723-5662

# POOL RENOVATION CONTRACT

Date 07/11/2023

| Contract Submitted to Customer: | Work To Be Performed At: |
|---|---|
| Name Jerry Pickett | Name Jerry Pickett |
| Street 743 Elm Street | Street 743 Elm Street |
| City Hatfield | City Hatfield State PA Zip 19440 |
| State PA Zip 19440 | |
| Phone 267-808-6121 | |
| E-mail: jerry.pickett@comcast.net | |

**Description of the work to be performed, including materials and labor for the project**

Pool: 500SF - Tile Only: 95LF - Bench: 0 - Spa: 0 - Skimmers: 1
Target tile: 0 Trim Tile - 0 - Steps: 4 - Skimmer Tile: 3LF
*Drain pool and remove hydrostatic plugs to prevent pool from shifting.

REMOVE AND INSTALL NEW TILE Marbled Blue 323 — $5,000.00
*We will remove old tile and old mortar-bed. Next we will install new mortar bed and new frost proof Standard tile around the perimeter of the pool. (3yr Labor warranty) Warranty does not cover issues caused by nature, weather conditions such as freezing, anything structural, deck movement, normal wear & tear or any moisture protrusion caused by weather conditions.

TILE GROUT COLOR:

SURFACE PREP AND PLASTER FINISH APPLICATION
*Chip below tile line, around drains, around lights, fittings and returns, necessary for a nice flush finish.
*Light acid wash entire pool as well as rinse and drain acid wash
*Apply bonding agent in order to make new plaster adhesive for a firm finish
*Pump new Plaster finish into pool and hand trowel until finish sets properly
*Install new VGB certified drain covers, fittings *Free of cost
*New 50% stainless steel 50% nylon brush *Free of cost.

PLASTER FINISH WHITE — $7,000.00
*3 year workmanship warranty from CORONADO'S
This limited warranty does not cover damages to the finish which have been faded, stained, physically damaged, lack of proper water chemistry, damages from structural movements, scaled, chemical abuse or sanitation applications

15-warry product
5-labor

(2,150.00 QUARTZ) cosmetic mari

$50.00 FEE ALREADY DEDUCTED FROM ESTIMATE
*All materials and equipment will be provided by Coronado's pool renovations. ($50.00 ALREADY DEDUCTED)
*THE PRICE LISTED ON THE ESTIMATE WILL BE VALID AS LONG AS THE CONTRACT IS FINALIZED BEFORE 08/01/2023

**TOTAL** $12,000.00

A deposit of 20% in the amount of ($ 2,400.00) will be required upon execution of this contract for purchases of special order material. **Your deposit is non refundable if you want to cancel after the third day.**
Payment made as follows: $4,800.00 at arrival to install tile & $4,800.00 at arrival to finish plaster

**Customer Initials** JP NG

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**1.Copy of Contract** - Owner acknowledges receipt of a copy of this Home Improvement Contract at the time of signing.

**2.Governing laws/Attorney Fees-** This Contract shall be governed by the laws of the Commonwealth of Pennsylvania with jurisdiction and venue for actions pertaining to this agreement being vested in the Court of Common Pleas of Montgomery County PA or Magisterial District Court 38-1-24. Customer agrees and consents to jurisdiction and venue and waives any objection thereto. In the event of a breach of this contract by Customer, Contractor shall seek all attorney's fees and court costs incurred in enforcing its rights under this Contract and applicable Pennsylvania Law.

**3. Home Improvement Contractor Registration Numbers:** PA # 004896 NJ # 13VH04487600

**4. Current Amount of Insurance Maintained:**

a. General Liability: $1,000,000. Automobile Liability: $1,000,000. Workers Compensation: $1,000,000.

**5.Bureau of Consumer Protection Toll Free Telephone Number:** 1-888-520-6680

**6.Additional Terms –**

**a)** The price listed above covers only products and services specifically mentioned in this contract. All preparations *for interior pool and/or spa finishes are based on the existing finish being in sound condition with a strong bond.* Any additional work resulting from hollow spots, cracks, delaminating surface or surface failure during preparation work, or any other issues related to plaster, tile, coping or other work may result in additional cost which shall be the subject of a written change order signed by the parties.

**b)** Side deals between Customer & Coronados employees are not permitted and will represent a breach of this contract. Any work has to be contracted directly with Coronados in writting to be valid.

**c)** Pool Lights: Replacing the POOL LIGHT GASKET and LIGHT BLUB is recommended. Pool light gaskets deteriorate over time and specially when removed from the water to a different temperature causing water to enter the light and a possible shortage. We are not responsible if this happens.

**d)** Additional payments for the contracted work after receipt of the initial deposit and material costs shall be paid by owner as directed by contractor. If payments are not made at the time of crew arrival, contractor may cancel work that day and reschedule after payment is received. Any checks returned for insufficient funds or any other reason will be subject to an additional One Hundred Dollar ($100.00) fee. Owner acknowledges that as permitted by law, an attempt to file a Mechanics Lien on the property will be done if Contract is not paid in full as agreed on page 1.

**e)** >Owner must provide contractor with adequate access to the worksite in order to permit contractor to perform the work contracted for. Driveway must be accessible, if driveway is newly paved, contractor must be made aware for proper precaution. If contractor is not made aware and damages arise on driveway, contractor is not responsbile for those damages. Owner is responsible to remove Pool Deck furniture prior to our arrival to avoid dust on it.

>Owner shall provide contractor water and electrical services from the home at owner's cost to be used for the renovation process. Contractor shall have access to homeowners electric outlets. If homeowner desires for Contractor not to use specific outlets, those outlets must be labeled prior to our services.

>Water faucets that shouldn't be operated must be labeled by homeowner prior to our services Contractor must have access to at least one water faucet for our services. Pool filtration system must be turned off prior to our services. Contractor is not responsible for any issues due to filtration system being on a timer or not being completely off.

>Owner is responsible to Stop adding chlorine and chemicals to the pool at least 7 days prior to our arrival to drain the pool.

>Owner is responsible to make Contractor aware of any pool leaks that need to be addressed prior to the pool being renovated.

Customer Initials ~~GP~~ WG

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# ADDITIONAL NOTICES

**Hand-Crafted Finish**

Variations across the finished surface are expected with hand-crafted products. Minor fluctuations in thickness, levelness, texture, and coloration are inherent (unavoidable) characteristics to the process. Swimming pool interior finish coatings are considered "floating" finishes that must be leveled, smoothed, and finished by "free hand". In other words, the cementitious surface coating is not cast-in-place, molded, or guided by template, as with most cementitious products. Therefore, all swimming pool interior finishes will have some inherent fluctuation in smoothness, levelness, texture and coloration across the finish surface.

**Draining a Swimming Pool**

Normally, draining of a pool causes no problems. However there are a few things that can happen of which you should be aware:

Draining a swimming pool will put stress on the interior surface. When water is removed from a pool, there is always a risk to magnify certain pre-existing conditions that are not visible when the pool is full of water such as Pinholes, calcium nodules, blisters, air pockets, hollow plaster, some stains, and hairline cracking.

The pool may have movement or shift, a condition often times caused by hydrostatic pressure (i.e., too much moisture in the soil).* We always remove the Hydrostatic plugs to help prevent this issue, however movement of the pool is beyond the control of Coronado's when draining the pool.

Once the pool is drained, loose tile may fall off the pool, the plaster can shrink, expand, crack, blister, flake or pop off, etc. These problems do not normally occur, and are beyond the control of the contractor who has simply "drained the water."

By signing this agreement you understand and agree that Coronado's Pool Plaster Inc is to be free from all liability complaints, and claims for any damage resulting from the draining of the pool, including but not limited to pre-existing Pinholes, calcium nodules, blisters, air pockets, hollow plaster, some stains, hairline cracking and or issues caused because of movement of the pool due to a water bed too close to the pool applying too much pressure to the pool shell.

**Removing Tile. Cove Strip at Cantilever Decks.**

When removing the tile of a pool that has Cantilever Decking we will do our best to protect and save the Cove Strip (Plastic covering the joint between Coping and Tile) , however being able to leave the Cove Strip intact is uncertain. Damage to the Cove Strip during removal is a possibility and removal of the Cove Strip may be needed. If removal is needed, caulk material will need to be added as an alternative. Installing Caulk will have an additional cost, which should be given and authorized in writing.

**Coping/Tile Joint Sealing**

We do not provide a Warranty to our Coping or Tile joint Sealing. We use Self Leveling Sealant for horizontal areas and Non-Self Leveling for vertical areas. Due to expansion and contraction caused by freeze and thaw it would be unrealistic to provide a warranty. As the joint moves the seal will move and will separate eventually. This is an issue out of our control and we can not provide a guarantee against it.

**Efflorescence in Paver Coping**

Efflorescence is a whitish haze that appears on the surface of Concrete Pavers within a few days, weeks, or months of installation. Efflorescence may also be referred to as calcium hydroxide or free lime. Efflorescence is a completely natural occurrence. It usually occurs in random areas throughout all types of Pavers. Efflorescence does not affect the structural quality of the paver, but is merely cosmetic. Coronados is not responsible to go back to the pool and clean the efflorescence if develops in Paver's as this is an issue out of our control. There are a number of efflorescence cleaners available to consumers at paver stores.

**Pool Covers**

Removing the pool cover prior to our arrival to do the renovation is the pool owner's responsibility. If the pool cover has not been removed at the time of our arrival we will leave the site and reschedule the job. Pool owner must notify Coronado's Schedule Department if the pool cover still on.

Customer Initials JP WG

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

## 7. START UP PROCEDURE WHEN APPLYING NEW PLASTER

Upon completion of the renovation and/or installation of plaster, owner is responsible for plaster cure, Water chemistry and water hauling service **recommended for refill of the pool.** Owner must brush the pool twice daily for a period of (2) weeks from completion of installation. Contractor will provide instructions for post care. **Owner is responsible to refill the pool within twenty four (24) hours** of completed plaster installation.

### IMPORTANT NOTICE REGARDING POOL WATER CHEMISTRY

**Pool Owner acknowledges receipt of the NPC Swimming Pool Start Up Procedure Instructions** (attached) and understands the importance of the water chemistry, testing and balancing when applying a new Cementitious Pool Finish. The NPC Start Up Procedure must be followed. The pool water must be regularly tested and balanced immediately following the filling of the pool. Failure to follow the NPC Start Up Procedure and failure to test and properly balance the water may result in staining, scaling, hydration (aka as trapped moisture), etching, discoloration and/or calcium build up. Records of the testing must be maintained in order to preserve the warranty.

## 8) UNEXPECTED WORK NOTICE

**Bond Beam Rebuilding After Removing Tile & Coping.**
An aged bond beam can deteriorate from environmental ill-effects. The exact condition of the bond beam won't be known until the coping and tile are removed and it's inspected for soft, hollow or decaying conditions. While most repairs are isolated and minor, in some cases, big portions of or the entire bond beam will need to be rebuilt. If discovered, we will show you the condition and advise you of the remedy and cost, and seek your authorization for such.

**Hollow Plaster Found After Draining the Pool.**
Hollow Plaster is discovered when the pool is drained and the plaster is inspected for hollow sounds. One of the main reasons for hollow plaster is the improper application of a bonding agent or the lack of using a bonding agent when the pool was plastered previously. Due to the warranty we *provide we won't apply a new finish on a hollow surface. The hollow finish will need to be* chipped off and removed. If discovered, we will show you the condition and advise you of the remedy and cost, and seek your authorization for such.

**Paint Found After Removing Plaster.**
When removing plaster we will make sure that the underlying layer is free of paint or adhesives that could cause the new finish not to bond correctly. If paint or adhesives are found after removing one layer of plaster we will have to do a Waterblast Service. If discovered, we will show you the condition and advise you of the remedy and cost, and seek your authorization for such.

**Non-Leaking Cracks.**
If non leaking cracks are discovered we will show you the condition and advise you of the remedy and cost, and seek your authorization for such. *Due to having no control about pool movement or underlying concrete conditions, our crack repair jobs have no warranty in the event that cracks re-open again.

**Pools Covered:**
In the event that the pool was covered at the time of the initial inspection and an unexpected feature is found such as an additional Bench, Love Seat, Swim out, Sunshelf or any additional detail that requires additional work , we will let Customer know and advise of the cost, and seek authorization for such.

**Hidden Pipes at Spa Wall at Tile & Coping Removal:**
Spas normally have jets which have pvc piping to deliver the water to the jets, from time to time this pipes were mistakenly located to close to the mortar bed of the Tile or Coping causing the pipes to break from the vibration of the chipping hammers. Any additional work from the piping being less than 2" deep from the surface will required additional cost to repair and is not considered a mistake or negligence from Coronados.

**Customer Initials** ____ WG

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**9) PLASTER APPLICATION WORKMANSHIP WARRANTY**

Contractor shall warrant a workmanship warranty according to the products and services that are specified. The warranty as to plaster does not cover any staining, discoloration, scale, hairline cracks caused by dehydration, or crazing caused by the water chemistry. This warranty excludes any movement in the pool or spa shell that may affect the new finish causing cracks or any existing repair cracks. Contractor is not liable for any defects or damaged caused by the improper maintenance or misuse of the pool by owner or owner's guests.

**10) TILE & COPING INSTALLATION WORKMANSHIP WARRANTY**

Our Tile & Coping Installation Warranty excludes any issues caused by movement of the pool or movement of the pool deck also excludes grout or mortar bed deteriorated by moisture intrusion. Grout can have a variation of colors due to its cement, water and sand ratio, this should not be considered a workmanship issue. Installed Coping may not be flush with the pool deck if Pool Deck is uneven. Shade variations are a natural characteristic of all fired clay products and are inherent in brick and stone coping products. Owner must be present the day of installation and inspect the coping before installation. Use constitutes acceptance.

**OUR WORKMANSHIP WARRANTY FOR ALL DIFFERENT SERVICES IS NOT VALID UNTIL THIS CONTRACT HAS BEEN PAID IN FULL.**

Estimated Start Date: APRIL 2024 Estimated Completion Date: APRIL 2024

***Please note that the above dates are estimates only and may be subject to change due to circumstances beyond our control, such as: Deck contractor delays, weather conditions, supply delays or customer crew availability.***

**ACCEPTANCE OF CONTRACT** This contract is hereby accepted by Contractor and Owner on this date.

**<u>Your deposit is non refundable if you want to cancel after the third day.</u>**

Date of Transaction: 8/25/23

By: Wilson Gonzalez [signature]
On Behalf of Coronado's Pool Plaster, Inc.

Customer Signature: Jerry Pickett

Customer Signature: ______________

**RIGHT OF RESCISSION** "as required by section 201-7 of the Consumer Protection Law

"You the buyer (Owner), may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. **See attached notice of cancellation form for an explanation of this right."**

**WE ARE MEMBERS IN GOOD STANDING OF THE FOLLOWING ORGANIZATIONS AND ARE COMMITED TO AN EXCEPTIONAL STANDARD OF CONDUCT, CARE, INTEGRITY, RELIABILITY, AND SAFETY.**

APSP
The Association of Pool & Spa Professionals
MEMBER

703-838-0083

NESPA
NORTHEAST SPA & POOL ASSOCIATION

609-689-9111

MEMBER
National Plasterers
COUNCIL

920-945-0546

BBB.
ACCREDITED BUSINESS

866-411-2221

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.
Case# [illegible] Docketed at Montgomery County Prothonotary on 09/02/2025 [illegible] AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# START-UP PROCEDU[RE]

NPC RECOMMENDED

NPC
NATIONAL PLASTERERS COUNCIL
THE FOREMOST AUTHORITY IN THE CEMENTITIOUS INTERIOR POOL FINISHING INDUSTRY

## GENERAL CONSIDERATIONS

**The pool interior finish is especially susceptible to staining, scaling, and discoloration within the first 28 days.**

Initial start-up procedures include frequent brushing and daily testing and adjusting of the pool water.

The following recommended start-up procedures are based on common trade practice and methods shown to produce the best aesthetic results and longevity of the interior finish.

**Due to uniqueness of the fill water or other environmental factors, some portions of the start-up procedures may need to be modified to protect the pool finish.** For example; filling the pool with water having extremely high/low calcium hardness, high/low pH, or high/low total alkalinity may necessitate changes to these procedures.

Maintaining the proper initial and ongoing pool water chemistry, brushing the surface, a good pool cleaning system, and regular equipment maintenance are vital to achieve the anticipated lifespan of the finish.

## POOL FILLING DAY

1. **Make sure the pool filtration equipment is operational.**
2. Place a clean cloth on the end of the hose and position the hose in the deepest area of the pool to prevent damage to the surface. If a water truck is required, an initial 24 inches (60 cm) of water should be placed at the deepest area for a water cushion, followed by the water from the water truck cascading into the accumulate water.
3. **Fill the pool to the middle of the skimmer (or operating water level) without interruption as rapidly as possible with clean potable water to help prevent a bowl ring, and to decrease shrinkage cracking.**
4. Do not allow any external sources of water to enter the pool to help prevent streaking. It is not recommended to swim in the pool until the water is properly balanced and sanitized.
5. **At no time should any person or pets be allowed in the pool during the fill.**
6. **Test fill water for pH, total alkalinity (TA), calcium hardness (CH) and metals.** Record test results.
7. Start the pool equipment filtration system immediately after the pool is full to the middle of the skimmer (or operating water level). DO NOT turn on the pool heater until the water is chemically balanced and no cloudiness ('plaster dust') remains in the pool, as per manufacturer's recommendations.

## IT IS IMPORTANT TO FOLLOW EACH STEP IN THE RECOMMENDED ORDER PRIOR TO PROCEEDING TO THE NEXT STEP

### DAY 1

**Step #1.** Test fill water for pH, total alkalinity (TA), and calcium hardness (CH). Record test results.

**Step #2.** High alkalinity should be adjusted downward to 80 ppm – 100 ppm using pre-diluted muriatic acid (31–33% hydrochloric acid). Always pre-dilute the acid by adding it to a five gallon (19 L) bucket of water.

**Step #3.** Low alkalinity should be adjusted upward to 80 ppm using sodium bicarbonate (baking soda).

**Step #4.** pH should be reduced to 7.2 – 7.6 adding pre-diluted muriatic acid (after the alkalinity is in range 80 ppm – 100 ppm).

**Step #5.** Low calcium hardness should be adjusted upward to 80 ppm – 100 ppm. Adjustments of hardness increaser (calcium chloride) should be dissolved and added in 10 lb. increments, with each dosage separated by several hours. Never add hardness increaser (calcium chloride) and alkalinity increaser (sodium bicarbonate) at the same time.

**Step #6.** Brush the entire pool surface thoroughly at least twice daily to remove all plaster dust. **Wheeled vacuums or wheeled pool cleaners should not be used in the pool until after 28 days** (brush vacuums or non-wheeled pool cleaners are allowed).

**Step #7.** Although optional, it is recommended by many to add a sequestering agent, following the manufacturer's recommended initial start-up dosage, and when used, to continue dosing at the recommended maintenance dosage thereafter.

**Step #8.** Continuous operation of the pumps and filtration system is mandatory for seven days, or until the plaster dust has been brushed away and filtered out, and the water is no longer cloudy (minimum of 72 hours).

**Step #9.** DO NOT add chlorine for 48 hours. DO NOT turn on pool heater until there is no plaster dust in the pool.

### DAY 2

**Step #1.** Test pool water for pH, total alkalinity (TA), calcium hardness (CH) and repeat steps of DAY 1, except for Step #7.

**Step #2.** Once the total alkalinity (TA) is adjusted to 80 ppm – 100 ppm and the pH is adjusted to 7.2 – 7.6, then adjust calcium hardness (CH) upward to 100 ppm – 150 ppm. Adjustments of hardness increaser (calcium chloride) should be dissolved and added in 10 lb. increments, with each dosage separated by several hours. Never add hardness increaser (calcium chloride) and alkalinity increaser (sodium bicarbonate) at the same time.

### DAY 3

**Step #1.** Test and adjust pH, total alkalinity (TA) and calcium hardness (CH) as per DAY 2 Step #2, and repeat Steps #6 and #8 of DAY 1.

**Step #2.** Add pre-diluted chlorine or liquid chlorine to 1.5 ppm – 3.0 ppm level (**IMPORTANT:** For salt water (SWCG) pools, do not add salt within the first 30 days).

**Step #3.** Brush the entire pool surface thoroughly at least twice daily to remove all plaster dust.

### DAY 4 – 28

**Day 4 – 7**

**Step #1.** Test and adjust pH and total alkalinity (TA) maintaining ranges of DAY 2 Step #2, and repeat Steps #6 and #8 of DAY 1 each day for seven days to help prevent the scaling of the pool surface.

**Step #2.** In-floors and directional eyeballs may be added once water chemistry is balanced.

**Day 4**

**Step #1.** Calcium hardness (CH) should be increased slowly (if necessary) to a minimum of 200 ppm.

**Step #2.** Begin adjusting the cyanuric acid (CYA) to 30 ppm – 50 ppm. Add CYA through the skimmer while the pumps and filtration system are running for a minimum of three days. After each addition brush the entirety of the interior finish. **Concentrated CYA can cause pigmented finishes to discolor.**

**Day 7** If there is any plaster dust remaining, remove it using a brush pool vacuum.

**Day 7 – 28** Once plaster dust is removed, and with a good pool cleaning system in place, brushing can be limited to the removal of visually observed material (leaves, dirt, etc.) or when adding chemicals.

**ALWAYS ADD A CHEMICAL TO WATER**
**NEVER WATER TO THE CHEMICAL**

NPConline.org • 847-416-7272

[handwritten initials]

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# ... Docketed at Montgomery County Prothonotary on ... 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# WATER CHEMISTRY & MAINT

NPC RECOMMENDED

NPC
NATIONAL PLASTERERS COUNCIL
THE FOREMOST AUTHORITY IN THE CEMENTITIOUS INTERIOR POOL FINISHING INDUSTRY

## AFTER 28 DAYS & BEYOND

**It is critical that maintenance of the finish and balanced water chemistry continue throughout the year.**

The pool water chemistry constantly changes and must be continually monitored and chemically adjusted.[1] Especially, strive to maintain the pH and carbonate alkalinity[3] (CA) in their proper ranges. A negative (-) LSI will cause leaching, etching, or discoloration of the surface. A positive (+) LSI will cause mineral scaling, metal staining, or discoloration on the surface.

The Langelier Saturation Index (LSI) must be maintained between 0.0 and +0.3 for ongoing maintenance, especially within the first six months after the initial start-up, to avoid potentially serious damage to the interior finish surface.

- Free Chlorine = 1 ppm to 3 ppm
- Total Chlorine = 1 ppm to 3 ppm
- Sequestering Agent = as per manufacturer recommendations
- pH = 7.2 to 7.6
- Carbonate Alkalinity = 80 ppm to 120 ppm[3]
- Calcium hardness = 200 ppm to 400 ppm
- Cyanuric acid = 30 ppm to 50 ppm (ideal operating range)[2]
- TDS = 300 ppm to 1800 ppm (non-salt pools)
- Salt Level = as per manufacturer recommendations (salt chlorination ONLY)

pH + **C**arbonate **A**lkalinity Factor + **C**alcium **H**ardness Factor + **Temp**erature Factor — **TDS** Factor = Langelier Saturation Index (LSI)

### LSI CALCULATOR

| CA ppm | CH ppm | Temp F (C) | Total Dissolved Solids (TDS) ppm |
|---|---|---|---|
| FACTOR | FACTOR | FACTOR | FACTOR |
| 5 = 0.7 | 75 = 1.5 | 32 (0°C) = 0.0 | Up to 1000 = 12.10 |
| 25 = 1.4 | 100 = 1.6 | 37 (3°C) = 0.1 | 1000 = 12.19 |
| 50 = 1.7 | 150 = 1.8 | 46 (8°C) = 0.2 | 2000 = 12.29 |
| 75 = 1.9 | 200 = 1.9 | 53 (12°C) = 0.3 | 3000 = 12.35 |
| 100 = 2.0 | 300 = 2.1 | 60 (16°C) = 0.4 | 4000 = 12.41 |
| 125 = 2.1 | 400 = 2.2 | 66 (19°C) = 0.5 | 5000 = 12.44 |
| 150 = 2.2 | 800 = 2.5 | 76 (24°C) = 0.6 | |
| 200 = 2.3 | 1000 = 2.6 | 84 (29°C) = 0.7 | |
| 300 = 2.5 | | 94 (34°C) = 0.8 | |
| 400 = 2.6 | | 105 (41°C) = 0.9 | |

### CALCULATED LSI*

*Use the closest factor to the chemistry reading.

For example, if pool water chemistry is:
pH 7.8
CA 125
CH 300
Temp 90° (32°C)
TDS 950

| | |
|---|---|
| pH | 7.8 |
| CA Factor | 2.1 |
| CH Factor | 2.1 |
| Temp Factor | 0.8 |
| TOTAL | +12.8 |
| Subtract TDS Factor | -12.1 |
| LSI = | +0.7 |

A calculated (+) positive LSI has scaling tendencies. | Target calculated 0.0 to +0.3 is considered balanced.

**ALWAYS ADD A CHEMICAL TO WATER**
**NEVER WATER TO THE CHEMICAL**

[1] When possible, pre-dilute chemicals prior to adding into the pool water. Add chemicals while the pumps are running, and when possible, in the deep end away from benches, steps, and suction lines, followed by brushing of the area to disperse the chemicals. Chemical feeders should be installed and maintained in a manner that does not allow chemicals to enter the pool in concentrations that would cause deterioration, color loss, discoloration, or scaling of the interior finish. **Always follow the manufacturer's and/or plasterer's recommendations and instructions. Always add a chemical to water, never water to the chemical.**

[2] **CAUTION:** Research has shown that cyanuric acid (CYA) levels of 100 ppm (mg/l) and above may cause permanent deterioration to the pool surface. High cyanuric acid levels may require the CYA test to be diluted to calculate an accurate reading. CYA readings near 100 ppm should be retested using a solution that is diluted by 50% with tap or bottled water, then multiplied by 2, to reach the corrected CYA level. If the reading is still near 100 ppm after using a 50% dilution, it is recommended to drain the pool and/or treat the water to within the normal operating range for CYA (30 ppm – 50 ppm).

[3] **Total Alkalinity (TA) – 1/3 Cyanuric Acid = Corrected or Carbonate Alkalinity (CA)**

These procedures are sound technical practices in the industry and are advisory and non-binding. The National Plasterers Council does not regulate, control, or monitor the acts of its members or others in terms of conformance to any of the guidelines, recommendations, or other information contained in these technical procedures.

NPConline.org 847-416-7272

© 2021 National Plasterers Council, Inc.

REV 03-2021

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# THE SCIENCE OF SWIMMING POOL MAINTENANCE AND OPERATION

Keep your pool looking beautiful for years by following the water balance procedures recommended by your pool surface manufacturer, pool builder, pool dealer, or service company as follows:

Operate the pool's filtration system for an adequate length of time. Foliage, heavy bathing loads, screen enclosures, and rainy seasons must be taken into consideration. Under extreme environmental conditions and depending on the type of filter a good rule is:

**1. *Operate the filter system*** at least 2 hours beyond the rainy time of day. Allowing the filter to do most of the work trapping organic and inorganic matters requires less sanitizer (chlorine) and helps keep the water balanced. It also reduces the build up of by-products different sanitizers add to the pool water reducing the need for fresh water.

| | |
|---|---|
| **Diatomaceous Earth (DE) filters** | **8 - 10 hours** |
| **Cartridge filters** | **10 - 12 hours** |
| **Sand filters** | **12 - 15 hours** |

*Increased filter runs* will be required *under extreme environmental conditions. It is cheaper to operate the filter system than it is to correct a pool* problem with chemicals. Fresh water and good filtration is the key to maintaining swimming pool water in a tropical environment.

***2. Maintain water balance parameters:***

| | |
|---|---|
| Free available chlorine (FAC) | 1 to 3 parts per million (ppm) |
| Combined chlorine | 0ppm |
| Total available chlorine (TAC) | Equal to free (represents 0ppm combined) |
| pH | 7.2 to 7.6 |
| Alkalinity | 80 to 120ppm |
| Calcium hardness | 200 to 400ppm (*exposed aggregates 250ppm maximum*) |
| Metals | 0ppm |
| Cyanuric acid (stabilizer) | Below 70ppm |
| Total dissolved solids (TDS) | Below 1200ppm (*or no more than 800ppm above fill water*) |

***Note:*** *Pools with chlorine generators should not exceed approx. 3,500ppm TDS*
***Caution:*** *High stabilizer levels inhibit chlorine's ability to work effectively, requiring higher Chlorine ppm levels. This results in over feeding of chlorine causing yellow and/or brown stains on the pool surface and fittings. Chlorine residuals maintained above 4ppm will oxidize the inside of heaters resulting in discoloration of the pool surface.*

***Make- up/fill water and water balance products*** **contain contaminants in some form or another. Metals/minerals also make their way into the pool through the use of lawn treatment chemicals. These metals/minerals may come from your yard, neighboring lawns, golf courses, etc. Metals, as contaminants, will stain your pool if water balances are not maintained. Rain can upset the balance of pool water.**

***High pH*** above 7.8, ***high alkalinity*** above 120ppm, or ***high calcium*** levels above 450ppm will cause a saturation problem and drive metallic contaminants from the water resulting in stains and discolorations. A good analogy would be like comparing ice tea to swimming pool water. Addition of sugar into tea can be made only to the point that the ice tea can absorb the soluble sugar. Ice tea reaches a saturation point where as more sugar is added to the tea other sugar falls to the bottom of the glass. *Calcium hardness for exposed aggregate finishes should be maintained below 250ppm. Dilution is the low cost solution!* **"These are scale forming conditions!"**

***Low pH*** will etch the pool finish and damage the pool equipment usually resulting in pool surface stains and discolorations. Note: Be careful not to over sanitize with low pH sanitizers.

***Low alkalinity*** allows the pH to swing up or down causing aggressive or scaling water depending on the pH of rain and sanitizers. This can result in damage to heaters and cause pool surface stains and discolorations

***Low calcium hardness*** *will create aggressive water. This can etch the pool finish as well as cause aggressive water that will strip metals out of* heaters, gate valves, or any other metallic components the water comes in contact with as the pool is circulating. This too will result in pool surface stains and discolorations.

**Pool water chemistry is based on scientific principles.**

**Accurate testing and minimal adjustments must be made depending on the pool environment. There is no substitute for fresh water and good filtration when it comes to pool operation. Accurate and complete water testing regularly is essential.**

*Add a quality sequestering agent* upon initial fill, 1 quart per 10,000 gallons and always 4 to 8 ounces when adding water and water balance products. Following the above instructions will help prevent yellow etch spots, red or yellow stains, bluish, gray and/or black discolorations from appearing on the pool surface.

*Note: 3-inch tablets* triple in solubility when the temperature of the water increases from 77°F to 90°F. Use one (1) 3 inch tablet per 10,000 gallons per week. Make minor adjustments when necessary with liquid chlorine or calcium hypochlorite. Hartford loops should be installed when in-line Trichlor feeders are used. Floaters should be tethered in the deepest part of the pool. Always pre-dilute water balance chemicals in a 5-gallon bucket of water before adding to the pool. *Never add water to chemicals, always add chemicals to water! Electrolytic and catalytic sanitizers and bactericides should not be installed until the alkalinity and pH have stabilized usually at the 28 to 45 day initial cure.*

Signature: Jerry Pickett Date: 8/25/23

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

NATIONAL PLASTERERS COUNCIL

## Pool Interior Finish Disclosure

Pool Interior Finishes are composed of materials which may have inherent shading and/or color variation which is normal and should not be construed as a defect. Environmental factors such as humidity, temperature, substrate conditions, etc., during the installation process can cause normal color variations (normal mottling) across the surface of a coating. This is generally a uniform shading or cloudy appearance. These variations may be more pronounced on a cloudy day or at night with the light on. These conditions are beyond the contractor's control. Discoloration or mottled-shade variation is not considered a failure or defect, but is characteristic of most cementitious products, not needing remedy. It is a normal occurrence of most exposed aggregate finishes to have variation in the surface aggregate density, or variations in the concentration of aggregates across the finished surface. Proper évaluation of an interior finish is done when the pool is full of water and under natural light conditions only. The pool interior finish is NOT guaranteed for evenness of color and may not be the exact shade anticipated. The shade and color of pigmented surfaces will vary and "fade" over time. Crazing (check cracks and hairline cracks), may be noticeable and may be quite pronounced with colored finishes and are normal and are not considered defects.

It is highly recommended to perform a start-up procedure on freshly plastered pools, such as the NPC Start-up Procedure. A proper start-up will promote a longer lasting interior finish.

The longevity of the surface will be dependent on the water chemistry after start-up being properly maintained in accordance with the Association of Pool & Spa Professionals (APSP) published standards recommended practice of maintaining the Langlier Saturation Index at 0 to +/- 0.5. Overall common water chemistry parameters to be monitored are: chlorine, total and carbonate alkalinity, pH, calcium hardness, cyanuric acid and total dissolved solids.

Initials JP NG

Date: 8/25/23

***This document is endorsed by the National Plasterers Council, Inc***

*Note: We urge you to contact your NPC professional applicator for more information specific to your pool or spa. Chemical treatment alone will not produce sanitary pool water. A filtration system in proper operation along with a regiment of care including pool brushing will produce the optimal results for a clean and safe pool.*

***Additional consumer awareness information is available from the following sources:***

The Association of Pool & Spa Professionals (APSP)
2111 Eisenhower Avenue
Alexandria, VA 22314
703.838.0083
www.apsp.org

National Swimming Pool Foundation (NSPF)
4775 Granby Circle
Colorado Springs, CO 80919
719.540.9119
www.nspf.org

National Plasterers Council (NPC)
1000 North Rand Road, Suite 214
Wauconda, IL 60084
847.416.7271
www.npconline.org

Revised: 12162015

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**CORONADO'S POOL PLASTER, INC.**
668 County Line Rd
Telford PA, 18969
Cell 267-253-6448 · Fax 215-723-5662 . Tel 215-723-5885

www.coronadospoolplaster.com E-mail: jje@coronadospoolplaster.com

## Notice of Cancellation

Date of transaction:

You may cancel this transaction, without any penalty or obligation, within three business days from the above date. **Your deposit is non refundable if you want to cancel after the third day.**

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the Seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence in substantially as good condition as when received, any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice to Coronados Pool Plaster Inc. 668 W County Line Rd, Telford PA 18969 or send the signed notice on an email as an attachment to jje@coronadospoolplaster.com not later than midnight of the third day.

I hereby cancel this transaction.

Buyer/Customer Name ______________________________

Buyer/Customer Address ______________________________

Buyer/Customer Signature ____________________ Date ______________



Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

- plumb bottom drain seperate from the skimmer

- 2 lines (1 for bottom drain)
(1 for the skimmer)

- front of pump 2 lines coming out of the ground with a valve to control flow from skimmer & bottom drain

- ASK about dye for white plaster

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "B"

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Erica

**CORONADOS POOL PLASTER INC**

**668 County Line Rd, Telford PA 18969**

**Phone 215-723-5885 Fax 215-723-5662**

# POOL RENOVATION CONTRACT

Date 6/7/2024

**Contract Submitted to Customer:**

Name Jerry Pickett
Street 743 Elm St
City Hatfield
State PA Zip 19440
Phone (267)-808-6121
E-mail: jerry.pickett@comcast.net

**Work To Be Performed At:**

Name Same
Street
City State PA Zip

*Description of the work to be performed, including materials and labor for the project*

POOL CONCRETE DECK REMOVAL
Remove and haul away and dispose all concrete residues.

SIDE WALK REMOVAL
Remove 332sf of side walk this includes 2 concrete pods by the entrance of the home.

CANTILEVERED DECK INSTALLATION 610sf
Install new cantilevered deck forms around pool perimeter
Frame new concrete deck
Compact ground
Install 3/4 in gravel at framed area
Install reinforcement as needed
Pour new concrete deck
Install deck joints as needed
Broom finish concrete

$ 9,600 [handwritten]
Skimmer 4,800
+2,400
$ 7,200

SIDE WALK INSTALLATION 332sf
Frame new side walks x 4ft wide
Compact ground
Install 3/4 in gravel at framed area
Install reinforcement as needed
Pour new concrete
Install expansion joints as needed
Broom finish concrete.

Downspod will be extended under sidewalk to prevent the water from running over the concrete.

*6 month workmanship warranty on concrete work.

This limited warranty excludes damages from structural movements, such as cracking, freezing & thawing.

**TOTAL** $16,780.00

A deposit of 20% in the amount of ($ 3,356.00 ) will be required upon execution of this contract for purchases of special order material. **Your deposit is non refundable if you want to cancel after the third day.**
Payment made as follows: $6,712.00 due at framing crew arrival.
$6,712.00 due at concrete crew arrival.

**Customer Initials** ________ ________

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**1.Copy of Contract** - Owner acknowledges receipt of a copy of this Home Improvement Contract at the time of signing.

**2.Governing laws/Attorney Fees-** This Contract shall be governed by the laws of the Commonwealth of Pennsylvania with jurisdiction and venue for actions pertaining to this agreement being vested in the Court of Common Pleas of Montgomery County PA or Magisterial District Court 38-1-24. Customer agrees and consents to jurisdiction and venue and waives any objection thereto. In the event of a breach of this contract by Customer, Contractor shall seek all attorney's fees and court costs incurred in enforcing its rights under this Contract and applicable Pennsylvania Law.

**3. Home Improvement Contractor Registration Numbers:** PA # 004896 NJ # 13VH04487600

**4. Current Amount of Insurance Maintained:**

a. General Liability: $1,000,000. Automobile Liability: $1,000,000. Workers Compensation: $1,000,000.

**5.Bureau of Consumer Protection Toll Free Telephone Number:** 1-888-520-6680

**6.Additional Terms –**

**a)** The price listed above covers only products and services specifically mentioned in this contract. All preparations for interior pool and/or spa finishes are based on the existing finish being in sound condition with a strong bond. Any additional work resulting from hollow spots, cracks, delaminating surface or surface failure during preparation work, or any other issues related to plaster, tile, coping or other work may result in additional cost which shall be the subject of a written change order signed by the parties.

**b)** Side deals between Customer & Coronados employees are not permitted and will represent a breach of this contract. Any work has to be contracted directly with Coronados in writting to be valid.

**c)** Pool Lights: Replacing the POOL LIGHT GASKET and LIGHT BLUB is recommended. Pool light gaskets deteriorate over time and specially when removed from the water to a different temperature causing water to enter the light and a possible shortage. We are not responsible if this happens.

**d)** Additional payments for the contracted work after receipt of the initial deposit and material costs shall be paid by owner as directed by contractor. If payments are not made at the time of crew arrival, contractor may cancel work that day and reschedule after payment is received. Any checks returned for insufficient funds or any other reason will be subject to an additional One Hundred Dollar ($100.00) fee. Owner acknowledges that as permitted by law, an attempt to file a Mechanics Lien on the property will be done if Contract is not paid in full as agreed on page 1.

**e)** >Owner must provide contractor with adequate access to the worksite in order to permit contractor to perform the work contracted for. Driveway must be accessible, if driveway is newly paved, contractor must be made aware for proper precaution. If contractor is not made aware and damages arise on driveway, contractor is not responsbile for those damages. Owner is responsible to remove Pool Deck furniture prior to our arrival to avoid dust on it.

>Owner shall provide contractor water and electrical services from the home at owner's cost to be used for the renovation process. Contractor shall have access to homeowners electric outlets. If homeowner desires for Contractor not to use specific outlets, those outlets must be labeled prior to our services.

>Water faucets that shouldn't be operated must be labeled by homeowner prior to our services Contractor must have access to at least one water faucet for our services. Pool filtration system must be turned off prior to our services. Contractor is not responsible for any issues due to filtration system being on a timer or not being completely off.

>Owner is responsible to Stop adding chlorine and chemicals to the pool at least 7 days prior to our arrival to drain the pool.

>Owner is responsible to make Contractor aware of any pool leaks that need to be addressed prior to the pool being renovated.

Customer Initials ________ ________

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# ADDITIONAL NOTICES

**Hand-Crafted Finish**

Variations across the finished surface are expected with hand-crafted products. Minor fluctuations in thickness, levelness, texture, and coloration are inherent (unavoidable) characteristics to the process. Swimming pool interior finish coatings are considered "floating" finishes that must be leveled, smoothed, and finished by "free hand". In other words, the cementitious surface coating is not cast-in-place, molded, or guided by template, as with most cementitious products. Therefore, all swimming pool interior finishes will have some inherent fluctuation in smoothness, levelness, texture and coloration across the finish surface.

**Draining a Swimming Pool**

Normally, draining of a pool causes no problems. However there are a few things that can happen of which you should be aware:

Draining a swimming pool will put stress on the interior surface. When water is removed from a pool, there is always a risk to magnify certain pre-existing conditions that are not visible when the pool is full of water such as Pinholes, calcium nodules, blisters, air pockets, hollow plaster, some stains, and hairline cracking.

The pool may have movement or shift, a condition often times caused by hydrostatic pressure (i.e., too much moisture in the soil).* We always remove the Hydrostatic plugs to help prevent this issue, however movement of the pool is beyond the control of Coronado's when draining the pool.

Once the pool is drained, loose tile may fall off the pool, the plaster can shrink, expand, crack, blister, flake or pop off, etc. These problems do not normally occur, and are beyond the control of the contractor who has simply "drained the water."

**By signing this agreement you understand and agree that Coronado's Pool Plaster Inc is to be free from all liability complaints, and claims for any damage resulting from the draining of the pool, including but not limited to pre-existing Pinholes, calcium nodules, blisters, air pockets, hollow plaster, some stains, hairline cracking and or issues caused because of movement of the pool due to a water bed too close to the pool applying too much pressure to the pool shell.**

**Removing Tile, Cove Strip at Cantilever Decks.**

When removing the tile of a pool that has Cantilever Decking we will do our best to protect and save the Cove Strip (Plastic covering the joint between Coping and Tile), **however being able to leave the Cove Strip intact is uncertain. Damage to the Cove Strip during removal is a possibility and removal of the Cove Strip may be needed. If removal is needed, caulk material will need to be added as an alternative. Installing Caulk will have an additional cost, which should be given and authorized in writing.**

**Coping/Tile Joint Sealing**

**We do not provide a Warranty to our Coping or Tile joint Sealing.** We use Self Leveling Sealant for horizontal areas and Non-Self Leveling for vertical areas. Due to expansion and contraction caused by freeze and thaw it would be unrealistic to provide a warranty. As the joint moves the seal will move and will separate eventually. This is an issue out of our control and we can not provide a guarantee against it.

**Efflorescence in Paver Coping**

Efflorescence is a whitish haze that appears on the surface of Concrete Pavers within a few days, weeks, or months of installation. Efflorescence may also be referred to as calcium hydroxide or free lime. Efflorescence is a completely natural occurrence. It usually occurs in random areas throughout all types of Pavers. Efflorescence does not affect the structural quality of the paver, but is merely cosmetic. Coronados is not responsible to go back to the pool and clean the efflorescence if develops in Paver's as this is an issue out of our control. There are a number of efflorescence cleaners available to consumers at paver stores.

**Pool Covers**

Removing the pool cover prior to our arrival to do the renovation is the pool owner's responsibility. If the pool cover has not been removed at the time of our arrival we will leave the site and reschedule the job. Pool owner must notify Coronado's Schedule Department if the pool cover still on.

**Customer Initials** _________ _________

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**7. START UP PROCEDURE WHEN APPLYING NEW PLASTER**

*Upon completion of the renovation and/or installation of plaster, owner is responsible for plaster cure, Water chemistry and water hauling service recommended for refill of the pool. Owner must brush the pool twice daily for a period of (2) weeks from completion of installation. Contractor will provide instructions for post care.* **Owner is responsible to refill the pool within twenty four (24) hours of completed plaster installation.**

**IMPORTANT NOTICE REGARDING POOL WATER CHEMISTRY**

**Pool Owner acknowledges receipt of the NPC Swimming Pool Start Up Procedure Instructions (attached)** and understands the importance of the water chemistry, testing and balancing when applying a new Cementitious Pool Finish. The NPC Start Up Procedure must be followed. The pool water must be regularly tested and balanced immediately following the filling of the pool. Failure to follow the NPC Start Up Procedure and failure to test and properly balance the water may result in staining, scaling, hydration (aka as trapped moisture), etching, discoloration and/or calcium build up. Records of the testing must be maintained in order to preserve the warranty.

**8) UNEXPECTED WORK NOTICE**

**Bond Beam Rebuilding After Removing Tile & Coping.**
An aged bond beam can deteriorate from environmental ill-effects. The exact condition of the bond beam won't be known until the coping and tile are removed and it's inspected for soft, hollow or decaying conditions. While most repairs are isolated and minor, in some cases, big portions of or the entire bond beam will need to be rebuilt. If discovered, we will show you the condition and advise you of the remedy and cost, and seek your authorization for such.

**Hollow Plaster Found After Draining the Pool.**
Hollow Plaster is discovered when the pool is drained and the plaster is inspected for hollow sounds. One of the main reasons for hollow plaster is the improper application of a bonding agent or the lack of using a bonding agent when the pool was plastered previously. Due to the warranty we provide we won't apply a new finish on a hollow surface. The hollow finish will need to be chipped off and removed. If discovered, we will show you the condition and advise you of the remedy and cost, and seek your authorization for such.

**Paint Found After Removing Plaster.**
When removing plaster we will make sure that the underlying layer is free of paint or adhesives that could cause the new finish not to bond correctly. If paint or adhesives are found after removing one layer of plaster we will have to do a Waterblast Service. If discovered, we will show you the condition and advise you of the remedy and cost, and seek your authorization for such.

**Non-Leaking Cracks.**
If non leaking cracks are discovered we will show you the condition and advise you of the remedy and cost, and seek your authorization for such. *Due to having no control about pool movement or underlying concrete conditions, our crack repair jobs have no warranty in the event that cracks re-open again.

**Pools Covered:**
In the event that the pool was covered at the time of the initial inspection and an unexpected feature is found such as an additional Bench, Love Seat, Swim out, Sunshelf or any additional detail that requires additional work , we will let Customer know and advise of the cost, and seek authorization for such.

**Hidden Pipes at Spa Wall at Tile & Coping Removal:**
Spas normally have jets which have pvc piping to deliver the water to the jets, from time to time this pipes were mistakenly located to close to the mortar bed of the Tile or Coping causing the pipes to break from the vibration of the chipping hammers. Any additional work from the piping being less than 2" deep from the surface will required additional cost to repair and is not considered a mistake or negligence from Coronados.

*Customer Initials* _________ _________

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**9) PLASTER APPLICATION WORKMANSHIP WARRANTY**
Contractor shall warrant a workmanship warranty according to the products and services that are specified. The warranty as to plaster does not cover any staining, discoloration, scale, hairline cracks caused by dehydration, or crazing caused by the water chemistry. This warranty excludes any movement in the pool or spa shell that may affect the new finish causing cracks or any existing repair cracks. Contractor is not liable for any defects or damaged caused by the improper maintenance or misuse of the pool by owner or owner's guests.

**10) TILE & COPING INSTALLATION WORKMANSHIP WARRANTY**
Our Tile & Coping Installation Warranty excludes any issues caused by movement of the pool or movement of the pool deck also excludes grout or mortar bed deteriorated by moisture intrusion. Grout can have a variation of colors due to its cement, water and sand ratio, this should not be considered a workmanship issue. Installed Coping may not be flush with the pool deck if Pool Deck is uneven. Shade variations are a natural characteristic of all fired clay products and are inherent in brick and stone coping products. Owner must be present the day of installation and inspect the coping before installation. Use constitutes acceptance.

**OUR WORKMANSHIP WARRANTY FOR ALL DIFFERENT SERVICES IS NOT VALID UNTIL THIS CONTRACT HAS BEEN PAID IN FULL.**

Estimated Start Date: April 2025 Estimated Completion Date: April - May 2025

*Please note that the above dates are estimates only and may be subject to change due to circumstances beyond our control, such as: Deck contractor delays, weather conditions, supply delays or customer crew availability.*

**ACCEPTANCE OF CONTRACT** This contract is hereby accepted by Contractor and Owner on this date.
**Your deposit is non refundable if you want to cancel after the third day.**

Date of Transaction: ____________________

By: [signature] ____________________
On Behalf of Coronado's Pool Plaster, Inc.

Customer Signature: ____________________

Customer Signature: ____________________

**RIGHT OF RESCISSION** "as required by section 201-7 of the Consumer Protection Law

"You the buyer (Owner), may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. **See attached notice of cancellation form for an explanation of this right."**

**WE ARE MEMBERS IN GOOD STANDING OF THE FOLLOWING ORGANIZATIONS AND ARE COMMITED TO AN EXCEPTIONAL STANDARD OF CONDUCT, CARE, INTEGRITY, RELIABILITY, AND SAFETY.**

APSP
The Association of Pool & Spa Professionals
MEMBER

703-838-0083

NESPA
NORTHEAST SPA & POOL ASSOCIATION

609-689-9111

MEMBER
National Plasterers
NPC
COUNCIL

920-945-0546

BBB.
ACCREDITED BUSINESS

866-411-2221

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Case# 2025-19921-4 Docketed at Montgomery County Prothonotary on 09/08/2025 11:51 AM, Fee = $0.00. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**CORONADO'S POOL PLASTER, INC.**
668 County Line Rd
Telford PA, 18969
Cell 267-253-6448 • Fax 215-723-5662 . Tel 215-723-5885

www.coronadospoolplaster.com E-mail: jje@coronadospoolplaster.com

## Notice of Cancellation

Date of transaction:

You may cancel this transaction, without any penalty or obligation, within three business days from the above date. **Your deposit is non refundable if you want to cancel after the third day.**

If you cancel, any property traded in, any payments made by you under the contract or sale, and any negotiable instrument executed by you will be returned within ten business days following receipt by the Seller of your cancellation notice, and any security interest arising out of the transaction will be cancelled.

If you cancel, you must make available to the seller at your residence in substantially as good condition as when received, any goods delivered to you under this contract or sale; or you may, if you wish, comply with the instructions of the seller regarding the return shipment of the goods at the seller's expense and risk.

If you do make the goods available to the seller and the seller does not pick them up within twenty days of the date of your notice of cancellation, you may retain or dispose the goods without any further obligation. If you fail to make the goods available to the seller, or if you agree to return the goods to the seller and fail to do so, then you remain liable for performance of all obligations under the contract.

To cancel this transaction, mail or deliver a signed and dated copy of this cancellation notice or any other written notice to Coronados Pool Plaster Inc. 668 W County Line Rd, Telford PA 18969 or send the signed notice on an email as an attachment to jje@coronadospoolplaster.com not later than midnight of the third day.

I hereby cancel this transaction.

Buyer/Customer Name ______________________________

Buyer/Customer Address ______________________________

Buyer/Customer Signature ____________________ Date ______________

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "C"

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Maxum A Company of The Hartford
1 Hartford Plaza
Hartford, CT 06155

Coronados Pool Plaster Inc
Attn: Jose Coronado
668 County Line Rd
Telford, PA 18969

© 2022 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

**Maxum | A Company of The Hartford**
Claims Department
1 Hartford Plaza
Hartford, CT 06155

MAXUM
A Company of The Hartford

June 3, 2025

Coronados Pool Plaster Inc
Attn: Jose Coronado
668 County Line Rd
Telford, PA 18969
gm@coronadospoolplaster.com

**VIA REGULAR MAIL & VIA EMAIL**

RE: Jerry Picket adv Coronados Pool Plaster Inc

| | |
|---|---|
| Named Insured: | Coronados Pool Plaster Inc |
| Insurer: | Maxum Indemnity Company |
| Policy No: | BDG-3108499-01 eff 04/12/25-04/12/26 |
| Claim No.: | BDG-3108499-01-01-01 |

Dear Jose Coronado:

Maxum Indemnity Company, a company of The Hartford, ("Maxum"), previously acknowledged receipt of the captioned matter. As previously advised, based upon our review and analysis of the documentation and information currently in our possession, and based upon the policy at issue, we have determined there is no potential for coverage, and thus no duty to defend or indemnify you in this claim.

Set forth below are facts and policy terms found to be especially relevant to the review and investigation of this matter. You are encouraged to review the policy and call our attention to all additional facts, policy language, legal authority or other information you wish us to consider should you disagree with our position in this matter.

**FACTS**

The captioned matter arises out of a pool renovation at Jerry Picket's residence located at 743 Elm Street, Hatfield, Pennsylvania. The information provided indicates that you were hired by Jerry Picket ("Owner/Claimant") on or about 07/11/23 to renovate claimant's pool. It is our understanding a down payment was made by the claimant, but the work did not begin until May 2025. The work performed to date is the removal of the deck, coping tile and plaster, removing hydrostatic plugs, draining of the pool, and re-plaster of the pool. After the pool was drained days of heavy rain ensued resulting in the pool lifting and shifting out of place 05/16/25.

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently then non-confidential information and documents.

## COVERAGE

This matter concerns a claim of property damage to the pool shell, "your work" and "your work product". The Policy provides coverage for damages because of "property damage" that caused by an "occurrence." Based upon Navigators' review of the documentation presently available to it, Coronados Pool Plaster Inc's claim is for the costs of removing and replacing the pool shell that lifted and shifted off the ground. In accordance with the current laws in the State of Pennsylvania, the Pennsylvania *Supreme Court has held that faulty workmanship does not constitute an "occurrence"* under a commercial general liability policy. Therefore, as the claims associated with this matter do not constitute an "occurrence as defined in the policies, there cannot be any coverage under the Maxum policy.

In addition, property damage claims caused by land subsidence, are excluded by the policy as we will outline in this letter.

We now refer you to pertinent portions of the policy.

## THE POLICY

Maxum provided commercial general liability coverage to you under policy BDG-3108499-01 effective 04/12/25-04/12/26.

The Maxum policy contains Commercial General Liability form CG 0001 12 07 which reads in pertinent part as follows:

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II—Who Is An Insured;

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V—Definitions.

The insuring agreement in the Maxum policies reads in pertinent part:

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages **A** and **B**.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II—Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II—Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II—Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

* * *

The policy contains the following pertinent exclusions:

**2. Exclusions**

This insurance does not apply to:

...

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it. Paragraphs (i), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III—Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that" has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The Maxum policy is also endorsed with Exclusion – Land Subsidence endorsement form E615 which states:

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury", "property damage", or "personal and advertising injury" directly or indirectly arising out of, caused by, subsidence, settling, sinking, slipping, falling away, cavin in, shifting, eroding, mud flow, rising, tilting, or any other movement of land or earth.

* * *

The policy contains the following relevant definitions:

**SECTION V - DEFINITIONS**

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

...

4. "Coverage territory" means:
a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:
1) Goods or products made or sold by you in the territory described in a. above; or
2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and
3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay "damages" is determined in a "suit" on the the merits, in the territory described in Paragraph a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

8. "Impaired property" means tangible property, other than " your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;
if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

...

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

...

16.     "Products-completed operations hazard":

a.      Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1)     Products that are still in your physical possession; or

(2)     Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

(a)     When all of the work called for in your contract has been completed.

(b)     When all the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c)     When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.      Does not include "bodily injury" or "property damage" arising out of:

(1)     The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2)     The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)     Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17.     "Property damage" means:

a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.      Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or do submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

...

21.    "Your product"

    a.    Means:

        (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a)    You;

            (b)    Others trading under your name; or

            (c)    A person or organization whose business or assets you have acquired; and

        (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2)    The providing of or failure to provide warnings or instructions.

    c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

...

22.    "Your work"

    a.    Means:

        (1)    Work or operations performed by you or on your behalf; and

        (2)    Materials, parts or equipment furnished in connection with such work or operations.

    b.    Includes:

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

* * *

**DISCUSSION OF COVERAGE**

As previously discussed, the captioned matter arises out of a pool renovation at claimant's residence located in 743 Elm Street, Hatfield, Pennsylvania. You were hired by the claimant on or about 7/11/23 to renovate a pool at the claimant's home. It is our understanding that the pool plaster was applied the pool shell lifted and shifted off the ground after a week of rain. As advised above, based on current case law in the state of Pennsylvania, construction defect or faulty workmanship does not constitute an "occurrence", therefore there cannot be coverage for this claim. In addition, property damage claims caused by land subsidence, are excluded by the policy. Subsidence, in this case applies to the shifting and rising of the pool shell.

The policy does not afford coverage for any damages which do not fall within the policy definitions of "bodily injury" or "property damage" caused by an "occurrence". Damage or loss of use is not covered in the absence of an occurrence of consequential damage attributed to the insured's negligence. If the damage simply involves the removal, repair or replacement of the Insured's work it is not covered. Nor is there coverage if there is no property damage, but in order to repair or replace property other than the Insured's work, property has to be removed.

Claims of purely economic loss due to alleged failure of your work to meet the homeowner's quality standards are not property damages covered by the policy. Other economic losses not covered under the policy include delay damages, cost overruns and property impaired in value or use due to workmanship issues.

Maxum's position on coverage is based on the allegations in the documents received to date, the terms and provisions of the policy, and the facts known at this time. Maxum will reevaluate its position on coverage issues if there is a material change in the allegations or the facts known to it. If you have any additional information that you believe is pertinent to the coverage issues, we ask that you advise us as soon as possible. By responding to your request for coverage, and setting forth this position, Maxum does not waive any other policy provisions or defenses that may apply, and it specifically reserves the right to amend, supplement, or otherwise modify this letter upon receipt of additional information. This letter should not be construed to limit Maxum's right to later assert any other defenses potentially available under the policy or at law.

Should you disagree with the coverage position taken by Navigators you have the right to have this matter reviewed by the Department of Insurance located at:

Pennsylvania Insurance Department
1326 Strawberry Square
Harrisburg, PA 17120
1-877-881-6388303-894-499

No action undertaken by Maxum in investigating the facts in connection with this claim shall be construed in any way as waiving any right or operating as an estoppel to assert any right that Maxum has under the law or the policy at issue, nor shall any such action be deemed in anyway to be an

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

admission of liability or an admission of coverage under the policy. Similarly, nothing in this letter is intended, nor should it be construed, to deprive the insured of any rights they may have under the law or under the policy.

Should have any further questions at any time regarding the contents of this letter, please do not hesitate to contact the undersigned.

Sincerely,

Omar Smith
Claims Specialist
Navigators Specialty Insurance Company
(212) 553-8798
omar.smith@thehartford.com

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

# EXHIBIT "D"



Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

laxum | A Company of The Hartford
:laims Department
Hartford Plaza
lartford, CT 06155

September 26, 2025

Coronados Pool Plaster Inc
Attn: Jose Coronado
668 County Line Rd
Telford, PA 18969
gm@coronadospoolplaster.com

**VIA REGULAR MAIL & VIA EMAIL**

RE: Jerry Picket et al. v Coronados Pool Plaster Inc et al.
Court of Common Please, Montgomery County, No.2025-19921

| | |
|---|---|
| Named Insured: | Coronados Pool Plaster Inc |
| Insurer: | Maxum Indemnity Company |
| Policy No: | BDG-3108499-01 eff 04/12/25-04/12/26 |
| Claim No.: | BDG-3108499-01-01-01 |

Dear Jose Coronado:

Maxum Indemnity Company, a company of The Hartford, ("Maxum"), has been notified that this matter is now in litigation. Based upon our review and analysis of the complaint, documentation and information currently in our possession, and based upon the policy at issue, we have determined there is no potential for coverage, and thus no duty to defend or indemnify Coronados Pool Plaster Inc. in the above-referenced lawsuit.

Set forth below are facts and policy terms found to be especially relevant to the review and investigation of this matter. You are encouraged to review the policy and call our attention to all additional facts, policy language, legal authority or other information you wish us to consider should you disagree with our position in this matter.

**FACTS**

This litigated matter arises out of a pool renovation at Jerry Picket's residence located at 743 Elm Street, Hatfield, Pennsylvania. According to the complaint, Jerry Picket and Brian Picket ("Plaintiffs") hired Coronados Pool Plaster Inc ("Coronados") on or about July 11, 2023 to renovate Plaintiff's pool. A subsequent contract dated June 7, 2024 added concrete but work did not begin until April 2025. The work contracted for included the removal of the deck, coping tile and plaster, removing hydrostatic plugs, draining of the pool, and re-plaster of the pool. The complaint alleges that Coronados failed to properly drain the pool and to prepare the are for work contemplated under the contracts. Specifically, the Plaintiffs allege, among other things, that Coronados failed to pull and/or remove the hydrostatic plugs prior to draining the pool, failed to plan for proper drainage of the pool, and failed to take all

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

actions and/or tasks necessary to ensure that the Plaintiffs' pool could be drained properly. As direct or proximate result of Coronados' alleged acts and/or omissions, the Plaintiffs' pool sustained significant damage and needs to be replaced. Plaintiffs bring the causes of action against Coronados for negligence, violation of unfair trade practices, violation of the Pennsylvania home improvement consumer protection act, breach of contracts, unjust enrichment, and breach of warranty.

We now refer you to pertinent portions of the policy.

**THE POLICY**

Maxum provided commercial general liability coverage to you under policy BDG-3108499-01 effective 04/12/25-04/12/26. The insuring agreement in the Maxum policy reads in pertinent part:

**SECTION I—COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages **A** and **B**.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

* * *

The policy contains the following exclusions, in pertinent part:

**2. Exclusions**

This insurance does not apply to:

...

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

j. **Damage To Property**

"Property damage" to:

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (i), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III—Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

The Maxum policy is also endorsed with Exclusion – Land Subsidence endorsement form E615 which states:

> This insurance does not apply to any claim or "suit" for "bodily injury", "property damage", "personal and advertising injury" and we shall have no obligation to indemnify or defend any insured for "bodily injury", "property damage", or "personal and advertising injury" directly or indirectly arising out of, caused by, subsidence, settling, sinking, slipping, falling away, cavin in, shifting, eroding, mud flow, rising, tilting, or any other movement of land or earth.

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

* * *

The policy contains the following relevant definitions:

**SECTION V - DEFINITIONS**

...

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

...

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

18.    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or do submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

    ...

21.    "Your product"

    a.    Means:

        (1)    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a)    You;

            (b)    Others trading under your name; or

            (c)    A person or organization whose business or assets you have acquired; and

        (2)    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b.    Includes:

        (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        (2)    The providing of or failure to provide warnings or instructions.

    c.    Does not include vending machines or other property rented to or located for the use of others but not sold.

    ...

22.    "Your work"

    a.    Means:

        (1)    Work or operations performed by you or on your behalf; and

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

* * *

**DISCUSSION OF COVERAGE**

As set forth above, the Policy provides coverage for damages because of "property damage" caused by an "occurrence." The Policy defines "occurrence" to mean an "accident." In the absence of an "occurrence," there is no coverage under the Policy. In their complaint, the Plaintiffs make a claim for the costs associated with removing and replacing the pool shell that lifted and shifted off the ground because Coronado allegedly failed to properly drain the pool and did not remove the hydrostatic plugs in the pool as necessary. Allegations of damages related to Coronados' faulty acts or omissions in its renovation and work on the Plaintiffs' pool do not come within the Insuring Agreement of the Policy because they do not constitute "property damage" caused by an "occurrence." Because there are no claims for "property damage" caused by an "occurrence, there is no coverage and Maxum does not have a duty to defend or indemnity Coronado in the lawsuit.

In addition, even if the lawsuit alleged claims for "property damage" caused by an "occurrence" (which it does not), the Policy contains exclusions that would apply to exclude coverage. For example, the Policy contains a land subsidence exclusion, which excludes damages directly or indirectly arising out of or caused by the settling, sinking, slipping, falling away, shifting, rising, tilting, or any other movement of land or earth. The damages the Plaintiffs allege in their lawsuit are for the pool shell dislodging and elevating from the ground and are therefore excluded under the Policy. The Policy also contains an exclusion for property damage to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations" and for "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." Because the claim is for damage to property that Coronado pool was performing work on, these exclusions may also apply to preclude coverage. Maxum reserves its rights as it related to the exclusion in the Policy.

Maxum's position on coverage is based on the allegations in the documents received to date, the terms and provisions of the policy, and the facts known at this time. Maxum will reevaluate its position on coverage issues if there is a material change in the allegations or the facts known to it.

If you have any additional information that you believe is pertinent to the coverage issues, we ask that you advise us as soon as possible. By responding to your request for coverage, and setting forth this position, Maxum does not waive any other policy provisions or defenses that may apply, and it specifically reserves the right to amend, supplement, or otherwise modify this letter upon receipt of additional information. This letter should not be construed to limit Maxum's right to later assert any other defenses potentially available under the policy or at law.

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

Case# 2026-14180-0 Docketed at Montgomery County Prothonotary on 06/01/2026 1:59 PM, Fee = $304.50. The filer certifies that this filing complies with the provisions of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

Should you disagree with the coverage position taken by Navigators you have the right to have this matter reviewed by the Department of Insurance located at:

Pennsylvania Insurance Department
1326 Strawberry Square
Harrisburg, PA 17120
1-877-881-6388303-894-499

No action undertaken by Maxum in investigating the facts in connection with this claim shall be construed in any way as waiving any right or operating as an estoppel to assert any right that Maxum has under the law or the policy at issue, nor shall any such action be deemed in anyway to be an admission of liability or an admission of coverage under the policy. Similarly, nothing in this letter is intended, nor should it be construed, to deprive the insured of any rights they may have under the law or under the policy.

Should have any further questions at any time regarding the contents of this letter, please do not hesitate to contact the undersigned.

Sincerely,

Omar Smith
Claims Specialist
Navigators Specialty Insurance Company
(212) 553-8798
omar.smith@thehartford.com

cc: mluongo@highswartz.com

© 2023 by The Hartford. Classification: Company Confidential. No part of this document may be reproduced, published, or used without the permission of The Hartford.

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL®

9589 0710 5270 3182 0598 94

PRIORITY MAIL

US POSTAGE IMI PITNEY BOWES

ZIP 19446
02 7H
0006234483

$ 023.15⁰
JUN 02 2026

# FIRST CLASS MAIL

MFH

HRMM&L

HAMBURG, RUBIN, MULLIN, MAXWELL & LUPIN, PC
ATTORNEYS AT LAW
1684 S. BROAD STREET, SUITE 230
POST OFFICE BOX 1479
LANSDALE, PA 19446-5422

TO:

THE HARTFORD INSURANCE GROUP, INC
1 HARTFORD PLAZA
HARTFORD, CT 06155

Legal